OPINION OF THE COURT
A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
This is a tort action originally filed by Charles T. Bobroff (“debtor”) in the Court of Common Pleas of Philadelphia County, against Continental Bank, Frank Leis (an officer of the bank), the law firm of Blank, Rome, Comisky & McCauley, and two attorneys in that firm, Samuel H. Becker and Andrew D. Bershad (“appellants”). Upon *799 application of the appellants, the case was removed to the United States Bankruptcy Court for the Eastern District of Pennsylvania, where the debtor’s bankruptcy was pending. The Bankruptcy Court granted summary judgment for the appellants, 37 B.R. 847. The district court, 43 B.R. 746, reversed the decision of the Bankruptcy Court, on the ground that it lacked jurisdiction, and remanded the case to the state court. For the reasons given in the opinion that follows, we will affirm the district court’s order.
I.
The debtor formerly operated a shoe and leather goods store. In 1979, the debtor obtained a loan from Continental Bank for business use; the debt was secured by a second mortgage upon the debtor’s home and by a security interest in property of the debtor’s business. The debtor had contracted with Guardian Life Insurance Co. (“Guardian”) for the issuance of ten policies of disability insurance. Under these policies, in the event of disability, Guardian would reimburse the debtor for business overhead, pay a monthly amount to Continental Bank as loss payee, and pay monthly amounts to the debtor personally. In June of 1980, the debtor became disabled due to a psychiatric episode, and Guardian began paying under these policies, on a somewhat irregular basis. The debtor then defaulted on the debt owed to Continental. The Bank obtained a judgment against him in February of 1981 in the Court of Common Pleas of Philadelphia County.
On April 24, 1981, the debtor filed a petition in bankruptcy under chapter 7 of the Bankruptcy Code. On July 24, 1981, the debtor filed a praecipe to convert the case to one under chapter 13. Three days later, appellant Continental Bank filed a motion to “deny debtor’s request to convert the case from chapter 7 to chapter 13” on the ground that the debtor had more than $100,000 in unsecured debts and was therefore not eligible for chapter 13 relief. It appears that no action was taken on the motion at that time.
Shortly thereafter, on July 28, 1981, appellants Becker and Bershad deposed Jane Engel, a friend of the debtor’s, in the presence of appellant Leis. Ms. Engel stated that the debtor was storing items previously displayed at the debtor’s store (and presumably subject to Continental’s security interest) at her apartment and at the garage of a Mrs. Spector, and that the debtor stated to her that he had deliberately concealed three valuable lithographs from the Bank. The debtor had previously stated under oath that no one other than he had possession of any furnishings or art work belonging to his estate. The Blank, Rome firm informed the Bankruptcy Court of the deposition testimony, and the court ordered that the debtor’s residence and business and the Spector garage be padlocked pending an inventory by the trustee. Leis, Becker, and Bershad immediately brought Ms. Engel to the United States Attorney’s Office, where she gave a sworn statement. Subsequently, early in 1982, the individual appellants reported these events to Guardian. Guardian then terminated payments on all of the disability policies it had issued to the debtor.
In the spring of 1982 the Bankruptcy Court conducted an evidentiary hearing on Continental’s motion to deny conversion to chapter 13. On October 3, 1983 the Bankruptcy Court issued an order granting “the motion of Continental Bank to convert this chapter 13 proceeding to one under chapter 7.”
On February 22, 1983, the debtor commenced this action in the Court of Common Pleas of Philadelphia County. On March 18, 1983, the appellants filed an application pursuant to former 28 U.S.C. § 1478(a) (1982)[1] for removal of the action to the *800 Bankruptcy Court, stating that the debtor’s action in the state court was a “civil proceeding related to a case under title 11”[2] and that therefore the Bankruptcy Court had jurisdiction over the matter. The case was then automatically removed to the Bankruptcy Court, and the debtor’s motion to remand the case to the Pennsylvania Court of Common Pleas was denied.
In a “form of complaint” attached to the motion to remand, the debtor set forth three claims against the appellants: malicious prosecution, defamation, and interference with contractual relations. The parties subsequently agreed to a voluntary dismissal of the malicious prosecution cause of action. Debtor claimed that defendants had damaged his reputation in the community by stating that he was concealing assets from the bank and from the Bankruptcy Court. The debtor further claimed that defendants interfered with his contractual relations by inducing Guardian to cut off further payments to him under his policies of disability insurance. On March 5, 1984, the Bankruptcy Court granted summary judgment to appellants on both claims. On July 25, 1984 the district court, finding that this tort action was not “related to” the debtor’s bankruptcy proceeding, reversed and remanded the case to state court. This appeal followed.
II.
As a threshold matter, we must address the debtor’s contention that this court lacks jurisdiction over this appeal. Debtor first argues that because the order appealed from is a denial of summary judgment and remand (to state court) for trial, it is not an appealable final judgment. This court recently rejected this position. In Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir.1984), the district court had remanded a products liability action between a consumer (Higgins) and a distributor (Pacor) of the bankrupt’s (Manville) asbestos products to state court under substantially the same circumstances. Judge Garth explained why a collateral order such as this one must be deemed final and appealable:
While, in this case, it is true that there is no final judgment on the merits over all claims and parties, we believe that the remand order falls within the small class of orders, collateral to the rest of the litigation, which are appealable under the doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). For an order to be appealable under the Cohen collateral order doctrine, three requirements must be met: (1) it must conclusively determine the disputed question; (2) it must resolve an important question completely separate from the merits of the action; and (3) it must be effectively unreviewable on appeal from final judgment. Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). We find that these conditions have been satisfied.
It is first apparent that the remand order conclusively determines the disputed question of whether the Higgins-Pacor claim is “related to” bankruptcy *801 for purposes of 28 U.S.C. § 1471(b) (1982). Indeed, the very fact that the district court remanded to the state court, indicates that it will not alter its determination that there is no jurisdiction under section 1471(b).
Secondly, the district court’s determination that there was no section 1471(b) jurisdiction is easily separable from the remainder of the litigation. It does not involve consideration of the merits of Higgins’ products liability-personal injury claim against Pacor (or indeed of Pa-cor’s third party claim against Manville). It merely determined the collateral issue of whether that claim could properly be litigated in federal bankruptcy court. As is discussed infra, this jurisdictional question involves no more than a threshold determination of whether any judgment which might result from the Higgins-Pacor action could have a tangible effect on the Manville bankruptcy estate, such that it is “related to” that proceeding. It does not, however, involve any inquiry into how that judgment was reached, or whether that judgment was correct, and therefore does not implicate the merits of the claim itself.
Thirdly, the remand order would be effectively unreviewable if Pacor were forced to wait until a final judgment is entered in order to appeal. It is true that a portion of the removed litigation still remains for adjudication in the federal courts, i.e. the original Pacor-Manville third party action. In this case, however, we believe that Pacor’s opportunity to appeal might be irretrievably lost should review be withheld pending the outcome of the remaining third party claim. Here, the results of the district court’s remand order would be felt immediately. Upon remand, the state court would continue to adjudicate the Higgins-Pacor claim, since even if we were to rule that the district court improperly remanded to the state court, the jurisdiction of the state court to proceed with the Higgins-Pacor claim would not be affected. At the very latest, jurisdiction was revested in the Court of Common Pleas at the time the district court, rightly or wrongly, issued its remand order, if indeed jurisdiction was ever lost by the state court. See Chandler v. O’Bryan, 445 F.2d 1045, 1058 (10th Cir.1971), cert. denied, 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972).
Thus, the state court would be free to proceed and actually litigate the dispute on the merits. Indeed (especially if the Pacor-Manville claim is transferred to the Manville bankruptcy administration), the likelihood is great that the state court will actually enter a judgment before the remainder of this litigation is completed in the federal courts. Pacor could therefore be confronted with a judgment which was entered by a court of competent jurisdiction, and which could be afforded res judicata effect. If a valid state court judgment were actually entered against Pacor by the Court of Common Pleas, then the remand order would be a fait accompli, and a later appeal challenging its correctness would come too late to be of utility in vindicating any alleged right to have a federal forum.
743 F.2d at 987-89 (footnotes omitted). We believe that Judge Garth’s analysis applies with equal force to the instant case, and we find it dispositive of the debtor’s “finality” contention.
The debtor further contends that we are stripped of jurisdiction by former 28 U.S.C. § 1471(d) (now in modified form at 28 U.S.C.A. § 1334(c) (West Supp.1985)), which provides that a district court’s decision to abstain “in the interests of justice” from hearing a proceeding related to a title 11 case is not reviewable, as well as by former 28 U.S.C. § 1478(b) (now 28 U.S. C.A. § 1452(b) (West Supp.1985)), which provides that an order remanding a removed case “on any equitable ground” is not reviewable. The § 1478(b) contention was addressed and rejected in Pacor, supra:
The dispute in this case, however, does not involve a decision by the bankruptcy court, in the exercise of its discretion, to *802 remand the Higgins-Pacor actions on an equitable ground. Rather, the district court found that removal was flatly impermissible ab initio as a matter of law and it upheld Higgins’ contention that subsection (a) of section 1478 did not permit removal of this action in the first place due to lack of jurisdiction. If this interpretation is correct, then discretion and “equitable grounds” are simply not involved, since removal would be statutorily prohibited.
Equitable action by the bankruptcy court based on subsection (b) must first presume that removal was legally proper under subsection (a). If subsection (a) does not permit the removal, then subsection (b) never comes into play, and the absolute prohibition on appellate review over equitable remands which were granted or denied under this subsection [section 1478(b)] never becomes operative.
743 F.2d at 993 (footnotes omitted) (emphasis in original). Here, as in Pacor, the district court found that § 1478(a) did not permit removal because there was no jurisdiction under § 1471(b) in the first place, and thus § 1478(b) does not come into play.
We think it is equally clear that the limitations on review created by former § 1471(d) do not deprive us of jurisdiction. That section prevents review of an abstention, in the interests of justice, “from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.” (Emphasis added.) Clearly, this refers to discretionary abstention from deciding cases over which the court has “related to” jurisdiction, and not to determinations that “related to” jurisdiction does not exist in the first instance.[3] We conclude that we have jurisdiction to hear this appeal.
III.
The district court held that it did not have jurisdiction over this tort action because it was not a civil proceeding “related to cases under title 11.” The district court narrowly construed this provision as referring to proceedings that could affect the bankruptcy estate. Appellants argue that “related to” jurisdiction is much broader than this in scope, that it is intended to mirror the principle of pendent jurisdiction, and that the district court should assume jurisdiction whenever that will avoid fragmentation of litigation and duplication of effort, and further judicial economy.
Since the district court acted, however, this court has adopted the same “related to” test:
The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy____ An action is related to bankruptcy if the outcome could alter the debtor’s rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.
Pacor, Inc. v. Higgins, 743 F.2d at 994 (emphasis in original). Just as explicitly, we rejected the construction of “related to” that appellants advance now: “[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b). Judicial economy itself does not justify federal jurisdiction.” Id.
Appellants next contend that the outcome of this tort case will affect the estate because under the Bankruptcy Code the *803 underlying causes of action are in fact property of the estate. Upon review of the relevant provisions and policies of the Code, however, it becomes apparent that this contention is without merit.
With exceptions not relevant here, in a straight bankruptcy liquidation case the only property interests of a debtor that become part of the estate are those existing “as of the commencement of the case.” 11 U.S.C. § 541. To enable the chapter 7 debtor to make a fresh start, the Code sets the date of filing the petition as “the critical time as of which the property comprising the estate is to be determined, and the rights of others connected with the proceeding adjusted____” 4 Collier on Bankruptcy ([ 541.04, at 541-22 (15th ed.1984). Clearly, the debtor’s causes of action here did not accrue, and thereby become property interests, until after this case was commenced. Appellants, however, argue that because the events giving rise to these causes of action occurred after the debtor filed a praecipe to convert this case to chapter 13, and before the Bankruptcy Court ordered that the case be reconverted to chapter 7, we must look to the special provisions of chapter 13 to determine what constitutes property of the estate.
Under chapter 13, “[pjroperty of the estate includes, in addition to the property specified in section 541 of this title ... all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first____” 11 U.S.C. § 1306. As a leading commentator has said, “the very nature of a chapter 13 case as a debt extension proceeding necessitates a departure from the approach applicable in liquidation proceedings that property of the estate be determined, for the most part, as of the commencement of the case.” 5 Collier on Bankruptcy ([ 1306.01, at 1306-2 (15th ed.1984). Appellants’ position is that because the debtor’s tort causes of action accrued while the case was proceeding under chapter 13, they became part of the estate and remained as such even when the case was converted back to chapter 7.
We find appellants’ position unpersuasive. We cannot agree with appellants’ characterization of the events in the Bankruptcy Court as a conversion to chapter 7 followed by a reconversion to chapter 13. Though 11 U.S.C. § 706 provides that a debtor may convert a chapter 7 case to one under chapter 11 or chapter 13 at any time, that same section imposes a clear limitation on conversion: “Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.” 11 U.S.C. § 706(d). Indeed, from the outset appellants opposed conversion to chapter 13 on the ground that the debtor had more than $100,000 in unsecured debts, and was therefore not eligible for chapter 13 relief. The legislative history of the Code makes it clear that § 706(d) was designed to prohibit conversion in such circumstances. See S.Rep. No. 989, 95th Cong., 2d Sess. 94, reprinted in, 1978 U.S.Code Cong. & Ad. News 5787, 5880. We believe that in light of the conceded fact that the debtor was not eligible to proceed under chapter 13, the “conversion” to that chapter was void ab initio, and the provisions of § 1306 cannot be invoked to determine which property comprises the estate.
This result is consonant with the Bankruptcy Code’s goal of encouraging the use of debt repayment plans rather than liquidation. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News p. 5904. If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13 — which must be voluntary — a try will be greatly diminished. Conversely, when chapter 13 does prove unavailing “no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debt- or never sought to repay his debts----” In re Hannan, 24 B.R. 691, 692 (Bankr.E. *804 D.N.Y.1982). We hold, therefore, that the debtor’s tort claims were not property of the estate, and that the district court did not have jurisdiction to adjudicate them as being “related to” the debtor’s bankruptcy proceeding. Of course, in deciding that there was no jurisdiction, we intimate no view of the merits of debtor’s tort claims.
CONCLUSION
For the foregoing reasons, the judgment of the district court will be affirmed.

. That section provided:
A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit’s police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.
*800 Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333, direct removal to the bankruptcy court is eliminated. Civil proceedings "related to” cases under title 11 may be removed to the district courts, 28 U.S.C.A. § 1452(a) (West Supp.1985), and then referred to a bankruptcy court, 28 U.S.C.A. § 157(a) (West Supp.1985). It is not entirely clear whether it is the former statutes or the 1984 amendments that govern this appeal. Compare Pub.L. 98-353, § 122, 98 Stat. at 346 with Pacor, Inc. v. Higgins, 743 F.2d 984, 987 n. 4 (3d Cir.1984). Where there has been a change we will simply note it, as our analysis is essentially the same under either set of statutes.

. Former 28 U.S.C. § 1471(b) (1982) (now 28 U.S.C.A. § 1334(b) (West Supp.1985)) provided:
Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
Prior to the 1984 bankruptcy amendments, the bankruptcy courts would "exercise all of the jurisdiction conferred by this section on the district courts.” 28 U.S.C. § 1471(c) (1982).

. Current 28 U.S.C.A. § 1334(c)(2) (West Supp. 1985) mandates abstention from deciding state law claims related to a title 11 proceeding, where there is no independent basis for jurisdiction, "if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction." Such abstentions are not reviewable. This provision, however, does not apply to cases, such as this one, pending at the time the 1984 amendments were enacted. Pub.L. 98-353, § 122(b), 98 Stat. at 346. In any event, it too appears to presuppose that "related to” jurisdiction exists.