In re Douglas Jude STAIRS, Debtor.

No. 02–28453 MER.

United States Bankruptcy Court, D. Colorado.

Feb. 5, 2004.

---

Harold F. Hurst, Kiowa, CO, John Cimino, Denver, CO, for Debtor.

Virginia M. Dalton, Denver, CO, for trustee.

Kelly J. Sweeney, Denver, CO, for U.S. Trustee.

### ORDER ON DEBTOR'S ELIGIBILITY FOR CHAPTER 13 RELIEF AND DEBTOR'S MOTION TO DISMISS BANKRUPTCY CASE

MICHAEL E. ROMERO, Bankruptcy Judge.

This case comes before the Court on the Standing Chapter 13 Trustee's Motion for

Expedited Hearing Regarding the Debtor's Eligibility for Chapter 13 and the Debtor's Motion to Dismiss Bankruptcy Case and objections filed thereto by the Standing Chapter 13 Trustee and the U.S. Trustee. The Court having reviewed the file and the pleadings in this matter, considered the testimony received in an evidentiary hearing, and considered the arguments of counsel, this Court concludes that the Debtor was not eligible for Chapter 13 relief, pursuant to 11 U.S.C. § 109(e), on the date of filing his voluntary petition. Therefore, the Court finds that the Order Converting the Case to Chapter 13 dated June 23, 2003, should be set aside as void *ab initio*. The Court further concludes the Debtor's Motion to Dismiss Bankruptcy Case ("Motion to Dismiss"), is denied, without prejudice.

## PROCEDURAL BACKGROUND

On November 13, 2002, the Debtor, Douglas Jude Stairs ("Debtor"), filed for relief under Chapter 7 of the Bankruptcy Code. Albert Hoffman, (the "Interim Trustee") was appointed as the Interim Chapter 7 Trustee to administer the Debtor's estate. During the course of the Chapter 7 case, two adversary proceedings were filed. The first, Adversary Case No. 03–1135, was filed by BSB Leasing, Inc. ("BSB"), on February 13, 2003, against the Debtor to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523 and 727. The second, Adversary Case No. 03–1260 was filed by the Interim Trustee on April 3, 2003, to recover an alleged fraudulent conveyance made by the Debtor to the Debtor's spouse, Lisa K. Stairs. On May 12, 2003, the Interim Trustee filed his Notice of Possible Dividends. Subsequently, on June 18, 2003, the Debtor's Notice Converting his Case to Chapter 13 Pursuant to 11 U.S.C. § 706(a) (the "Conversion Notice"), was filed. The Order

granting the conversion was granted on June 23, 2003 (the "Conversion Order").

On November 3, 2003, the Standing Chapter 13 Trustee (the "Ch. 13 Trustee"), filed her objection to the Debtor's Amended Chapter 13 Plan. The Ch. 13 Trustee's objection asserted, *inter alia,* that the Debtor was not eligible for Chapter 13 relief pursuant to 11 U.S.C. § 109(e). On December 16, 2003, the Debtor moved to dismiss his bankruptcy case based upon an alleged settlement with his largest creditor. This dismissal motion was opposed by the Ch. 13 Trustee, as well as the U.S. Trustee. Finally, on January 8, 2004, the U.S. Trustee filed a motion to convert this case back to a case under Chapter 7. The response time for this motion as mandated by local rule has not yet run and thus this specific motion is not before this Court. Nevertheless, for the reasons stated below, this motion is now moot.

## DISCUSSION

The Ch. 13 Trustee (joined by the U.S. Trustee) argues the Debtor is not eligible for Chapter 13 relief due to the Debtor's *unsecured* debt total as calculated on the date of the filing of the Debtor's Chapter 7 petition (November 13, 2002). The Debtor conversely argues that his unsecured debt total does not exceed the statutory limits of 109(e) based on amended proofs of claim filed by certain creditors, as well as the Debtor's post-petition satisfaction of some of the same claims.

■ The Court's analysis must begin with the statute itself. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Section 109(e) states,

Only an individual with regular income that owes, ***on the date of filing of the petition,*** noncontingent, liquidated, unsecured debts of less than $290,-

525.00...may be a debtor under chapter 13 of this title *(emphasis added)*.

In determining eligibility as of the petition date, the Court must primarily look at the debtor's schedules and the timely-filed proofs of claim. *In re Hanson*, 275 B.R. 593, 596 (Bankr.D.Colo.2002) (citing *In re Barcal*, 213 B.R. 1008, 1015 (8th Cir. BAP 1997)).

The Debtor noted that his Schedule F, filed with his petition, identified only one unsecured debt in the amount of $7,703.66 owed to Citybank Visa.[1] The Claims Register indicates that five claims were timely filed in the Debtor's case (including claims by BSB and Portland).[2] Of those five claims, two were later amended to reflect satisfaction of all or a portion of the debt.[3] A third, filed by the Internal Revenue Service, was subsequently withdrawn.

The Debtor first argues that according to his Schedules and BSB's original proof of claim, the vast majority of his debt is secured and therefore, should not be included in any eligibility analysis. Alternatively, he argues that as a result of the post-petition payments made by his spouse, he is eligible for Chapter 13 relief.

■ The latter argument is the easiest to address. The Debtor's argument ignores the plain language of Section 109(e). The statutory provision is clear... eligibility is measured on the petition date. Thus, even though it is asserted by the Debtor that the BSB claim may have been substantially reduced, and may have been reduced to a zero balance (which is inconsistent with the latest claim filed by BSB), this reduction was a post-petition event and not relevant to eligibility analysis. *See In re Rohl*, 298 B.R. 95, 99–100 (Bankr.E.D.Mich.2003) (conversion of a Chapter 7 case to Chapter 13 and the operation of 11 U.S.C. Section 348(a) does not alter the date for the assessment of eligibility, which remains the date the petition is filed); *See also In re Pisczek*, 269 B.R. 641, 643 (Bankr.E.D.Mich.2001) (same).

The analysis cannot, and does not, end there. Debtor argues that the BSB and Portland claims were identified in the Schedules as secured claims and additionally, in the case of BSB, the original proof of claim indicated the amounts owed were secured. Thus, according to the Debtor, such amounts should not be considered as unsecured claims when conducting an eligibility analysis. This argument does not survive further scrutiny.

■ The original BSB proof of claim asserted a total amount owed of $222,225.49. It also indicated that the claim was secured by collateral valued at $18,000.00. Thus, on the face of this claim, BSB held an unsecured deficiency balance, on the petition date, in the amount of $204,225.49. BSB's first amended proof of claim filed on July 2, 2003, reflects the sale of the collateral and indicates that BSB

---

1. According to the Debtor's Schedule D (also filed on the petition date), three entities were identified as holding secured claims totaling $188,000.00 (BSB—$75,000.00; First Portland Corporation ("Portland")—$56,000.00; Liberty Capital Resources, Inc. ("Liberty")—$57,000.00).

2. It is important to note the Debtor is not contending that any of the debt identified in his Schedules or on the Claims Register is contingent or unliquidated.

3. BSB's original proof of claim was filed in the amount of $222,225.49, subsequently reduced to $206,925.49 and finally on the day of the hearing in this case, reduced again to $135,925.49. The Debtor testified that this claim was substantially reduced, if not fully satisfied, as a result of payments made post-petition by his spouse. Portland's original claim was filed in the amount of $74,024.32, subsequently reduced to $59,274.32.

holds a completely unsecured claim in the amount of $206,925.49 (the collateral was purportedly sold for $15,300.00). Similarly, the Portland proof of claim was amended to take into account the sale of its collateral (purportedly for $14,750.00), resulting in an unsecured claim as of the petition date of $59,274.32.

■ The Court further takes notice that Schedule D lists a secured debt owed to Liberty in the amount of $57,000.00. This debt appears to have been misclassified by the Debtor. The Debtor's own description of this debt reads as follows:

> Elbert County District Court Case No. 02CV170. Approximately Sept. 2002–Complaint dismissed against Debtor but Plaintiffs obtained a contempt citation against Debtor alleging Debtor's failure to turn over secured items belonging to Defendant corporation.

By the Debtor's own admission this debt is a debt owed for a "contempt citation."[4] Contempt citations are unsecured, not secured, debts. The Debtor offered no evidence at the hearing to the contrary. Accordingly, this Court finds that the debt owed to Liberty is an unsecured debt existing on the petition date. Based on this analysis, the Debtor's unsecured claims for eligibility purposes are computed as follows:

| | |
|---|---|
| BSB | $206,925.49 |
| Portland | 59,274.32 |
| Liberty | 57,000.00 |
| Citibank Visa | 7,703.66 |
| TOTAL | $360,903.47 |

Therefore, as of the petition date, the Debtor was ineligible for Chapter 13 relief.

■ Pursuant to 11 U.S.C. § 706,

> (a) [a] debtor may convert a case under this chapter to a case under Chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title...
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

Because the Debtor in this case was not eligible to convert his Chapter 7 case to Chapter 13, as he possessed unsecured debt on the petition date in excess of the statutory limit, he could not be a debtor under such chapter and his alleged conversion was void *ab initio*. *See Bobroff v. Continental Bank*, 766 F.2d 797, 803 (3rd Cir.1985).

■ The Court now turns to the Debtor's Motion to Dismiss. In this pleading the Debtor represents he has reached "a global settlement with his primary creditor, BSB Leasing, Inc... [t]herefore, Debtor sees no reason to proceed any further with this case." *Debtor's Motion to Dismiss*, ¶3. Both the Ch. 13 Trustee and the U.S. Trustee essentially assert the same objection to the requested relief, that creditors would be better served by the Debtor remaining a debtor under Chapter 7. This Court agrees.

11 U.S.C. § 707(a) states,

> The court *may* dismiss a case under this chapter only after notice and a hearing and only for *cause*... (*emphasis added*).

What constitutes "cause" as required under § 707(a) has been the subject to much

---

4. The Court notes that approximately 1½ months prior to the hearing on this matter, Debtor's counsel specifically requested the time to evaluate and amend the Debtor's Schedules. *See Minutes of Proceeding, December 2, 2003*. The Court granted the request and ordered that any amendments be filed by December 15, 2003. *See Order Setting Deadlines for Filing Documents and Briefs, December 11, 2003*. The Debtor did not avail itself of this opportunity and did not amend his Schedules to modify the characterization of the Liberty obligation.

debate. However, the predominant view, at a minimum, requires that dismissal not cause prejudice to the creditors. *E.g. In re Stephenson*, 262 B.R. 871, 874 (Bankr. W.D.Okla.2001) (where dismissal of a debtor's Chapter 7 case would prejudice creditors or where creditors will suffer legal harm or injury, dismissal is not proper). *See also, In re Klein*, 39 B.R. 530, 532 (Bankr.E.D.N.Y.1984) (a Court should not enter an order of dismissal if parties in interest would be prejudiced by that order). Furthermore, it is the Debtor's burden to show that dismissal would not prejudice his creditors. *In re Stephenson*, 262 B.R. at 874. No evidence was presented by the Debtor on this issue and therefore, this burden was not met.

■ This case was filed in November of 2002. For the previous fifteen months, creditors have been stayed from collection efforts by the operation of 11 U.S.C. § 362. Similarly, the Debtor's attempted conversion to Chapter 13 has precluded the Interim Trustee from prosecuting the alleged conveyance and possibly making distributions to creditors. As a result, creditors have already been prejudiced by this delay. Additionally, should dismissal be granted, each creditor may take independent action to assert the same type of fraudulent conveyance action as asserted by the Interim Trustee. Should this happen, the first creditor securing a judgment would be satisfied to the detriment and prejudice to the remaining creditors. The Bankruptcy Court remains the best forum to assure if there is merit in the fraudulent conveyance action, that all creditors would benefit.

Finally, § 707(a) requires "notice and hearing." The Interim Trustee is required to be served with any dismissal motion in a Chapter 7 case as required by Fed. R.Bankr.P.2002(a). Since the Debtor's Motion to Dismiss was not served upon the Interim Trustee, service is deficient.

As a result of this ruling, the Interim Trustee needs to be reappointed and courts presiding over the above referenced adversary actions, which have been held in abeyance during the Chapter 13 case, should be notified of this ruling.

For the above reasons, this Court:

ORDERS that the Conversion Order entered on June 23, 2003 will be set aside as void *ab initio* and the Debtor's Conversion Motion, upon which the Conversion Order was based, is denied, *nunc pro tunc* June 18, 2003.

FURTHER ORDERS that the Debtor's Motion to Dismiss is denied, without prejudice.

FURTHER ORDERS that the U.S. Trustee's Motion to Convert is hereby denied as moot.

FURTHER ORDERS that notice of this Order shall be served by the Debtor on all creditors listed in the Debtor's Creditor Matrix, as well as the Interim Trustee.