In re Norman E. SYLVIA, Jr., Alison W. Sylvia, Debtors.

SUROVIAK ELECTRIC, INC., and LaFramboise Well Drilling, Inc., Plaintiffs,

v.

Norman E. SYLVIA, Jr., Alison Sylvia, Defendants.

Bankruptcy No. 91–23269.
Adversary No. 95–2049.

United States Bankruptcy Court,
D. Connecticut.

Nov. 6, 1997.

Joel Kessler, Waterford, CT, for Plaintiffs.

Kenneth E. Lenz, The Lenz Law Firm, Cheshire, CT, for Defendants.

*MEMORANDUM OF DECISION ON COMPLAINT TO REVOKE DISCHARGES*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

I.

Suroviak Electric, Inc. ("Suroviak") and LaFramboise Well Drilling, Inc. ("the plain-

tiffs"), as creditors of Norman E. Sylvia, Jr. ("Norman") and Alison W. Sylvia ("Alison") ("the debtors"), brought a complaint to revoke the discharges the court granted to the debtors in their joint Chapter 7 case. The plaintiffs' amended complaint, filed November 6, 1996, seeks relief under 11 U.S.C. § 727(d)(2), which provides that on request of a creditor, and after notice and a hearing, the court shall revoke a discharge if "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee...." 11 U.S.C. § 727(d)(2).

After trial the plaintiffs claim, and the debtors deny, that they have proven five instances of the debtors' failure to deliver property of the estate to the Chapter 7 trustee. The debtors concede both the plaintiffs' standing and the timeliness of the original complaint. *See* 11 U.S.C. § 727(e)(2)(B). Only two of the five instances are resolved as they are sufficiently dispositive of the complaint.

## II.

The debtors filed their Chapter 7 joint petition on October 10, 1991, and the court granted the debtors their discharges on February 7, 1992. David F. Falvey ("Falvey"), as the debtors' lawyer, prepared and filed the debtors' voluntary joint petition. Martin W. Hoffman ("Hoffman") became the trustee of the debtors' Chapter 7 estate. The court, after receiving a "No Distribution Report" from Hoffman, on March 30, 1994 closed the debtors' case. On Hoffman's motion, which alleged that it was necessary for him to pursue an asset of the debtors "for the benefit of unsecured creditors," *Motion to Reopen* at 1, the court reopened the debtors' case on October 19, 1994.

Suroviak filed the original complaint in the reopened case on March 21, 1995 to revoke the debtors' discharges. Following four trial days, both parties have filed post-trial and reply briefs.

## III.

### *The Rosenshein Claim*

The debtors, on July 20, 1981, formed a Connecticut corporation under the name "Sylvia & Lewis Construction Co., Inc." ("the corporation"), with $1,000 paid in capital. *Plaintiffs' Exh. 24.* The debtors were the corporation's sole directors. *Plaintiffs' Exh. 25.* Shortly after forming the corporation, the debtors started using the name "Sylvia Construction, Inc." for the corporation, although at all times concerned they filed no papers to reflect such name change with the Connecticut Secretary of State's Office ("the Secretary"). On March 15, 1985, the Secretary dissolved the corporation for its failure to file two successive reports and sent a Certification of Dissolution to the corporate address. *Plaintiffs' Exh. 10.*

In late 1986 creditors filed two law suits against one or both of the debtors individually, describing them as "d/b/a Sylvia Construction Company." *Plaintiffs' Exhs. 29, 30.* In 1987 the Connecticut Commissioner of Labor filed seven complaints against Norman individually for his failure to pay wages to employees. Each complaint described Norman as "d/b/a Sylvia Construction Company." *Plaintiffs' Exhs. 11–17,*

On March 13, 1986 and in May, 1986 B.J.R. Construction Corporation ("BJR"), as contractor, and "Sylvia Construction Company," as subcontractor, entered into contracts for construction of a shopping center in Groton, Connecticut. *Plaintiffs' Exhs. 32, 33.* When a dispute arose between the parties to these contracts, the debtors individually, as "d/b/a Sylvia Construction Company," on December 12, 1988 brought suit in the Connecticut Superior Court against BJR and Rosenshein Associates ("Rosenshein"). *Plaintiffs' Exh. 34.* During a hearing in that litigation in August, 1989, Alison testified that the corporation had been incorporated on June 15, 1981, and that she "believed" it had been dissolved at the end of 1986. *Plaintiffs' Exh. 20.* Adinolfi, O'Brien & Hayes, P.C. ("AOH") represented the debtors in this litigation. Rosenshein filed a Chapter 11 case on December 6, 1990 in the Southern District of New York and listed "Sylvia Construction

Co., Inc." as a creditor. *Debtors' Exh. F.* AOH, on December 27, 1990, executed and filed a proof of claim on behalf of "Sylvia Construction Co., Inc." in the amount of $757,048.10 ("the Rosenshein claim"), indicating the debt was incurred in 1986. *Debtors' Exh. E.*

When the debtors contracted Falvey on December 31, 1990 to prepare their bankruptcy petition, Alison advised Falvey of the Rosenshein claim and stated that the corporation had gone out of business in 1985 or 1986. Falvey concluded that the Rosenshein claim was property of the debtors. Accordingly, he listed it on the debtors' schedule of personal property jointly owned under "liquidated debts owing debtor" as follows: "Bernard Rosenshein et al; money owed as a result of contract work—debtor has filed a Chapter 11 petition in New York, market value $758,000." *Plaintiffs' Exh. 7.* The petition's Statement of Financial Affairs also listed a law suit, to which the debtors were parties, as follows: "Case title: Sylvia Cons. Co. Inc. dba Norman and Alison Sylvia v. Bernard J. Rosenshein. Court and location: U.S. Bankruptcy Court, New York. Nature of Proceeding: Chapter 11 Bankruptcy; debtor's claim $758,000. Suit Status: case is continuing." Id. The petition additionally indicated that both debtors in the past six years had used as an "other name" the name "d/b/a Sylvia Construction Co., Inc." *Id.*

Hoffman was not present when the debtors were interviewed by a member of his law office at the initial creditors' meeting held on November 18, 1991. He testified that he did question Alison on a subsequent occasion, but he could not recall the subject matter.

The Rosenshein bankruptcy estate, on January 29, 1993, issued a dividend check in the amount of $30,000 payable to "Sylvia Construction, Inc. and Adinolfi, O'Brien & Hayes." *See Hoffman v. Adinolfi, O'Brien & Hayes, P.C. (In re Sylvia),* 190 B.R. 495 (Bankr.D.Conn.1995). The debtors retained the check, neither notifying Hoffman of the dividend check nor delivering it to him. Alison endorsed the check "Sylvia Construction, Inc. by Alison W. Sylvia, Treasurer" to AOH. *Id.* at 496. AOH, after depositing the check, retained $20,000 and on March 31, 1993 is-

sued their check for $10,000 payable to the debtors. *Id.* Hoffman, at some point thereafter, became aware of the $30,000 dividend and on November 10, 1993 deposed Alison. Alison showed Hoffman the BJR contracts, the bankruptcy notice received from the New York Bankruptcy Court and a photocopy of the proof of claim AOH had filed. With this information, Hoffman concluded that the Rosenshein claim belonged to the corporation and not to the debtors. He thereafter moved to close the debtors' estate as a no-asset estate. The court closed the case on March 30, 1994.

Falvey, on August 8, 1994, advised Hoffman that the corporation had been dissolved in 1985 and that the Rosenshein claim properly belonged to the debtors' estate. Hoffman, on October 3, 1994, moved the court to reopen the debtors' case. The court granted the motion on October 19, 1994 and Hoffman thereafter brought a complaint in this court to recover the $30,000 dividend from AOH, the debtors and two other parties to whom the debtors had given the proceeds of the dividend. This action presently remains pending.

The debtors contend that the Rosenshein claim is not property of their estate and that they need not have delivered the dividend check to Hoffman because, on May 8, 1997, they caused the Secretary to reinstate the corporation. They also contend that, in any event, they never knew that the corporation had been dissolved so that they cannot be held to have knowingly and fraudulently failed to deliver property to the trustee of their estate. *Debtors' Post Trial Brief at 8–9.*

## IV.

### *The Monarch Life Insurance Claim*

Norman, on January 16, 1990, allegedly applied to Monarch Life Insurance Company ("Monarch") for Mortgage Disability Insurance in connection with his residential mortgage. *Plaintiffs' Exh. 1* ¶ 3. Monarch issued a policy to Norman for coverage beginning March 15, 1990. *Id.* ¶ 9; *Plaintiffs' Exh. 2* ¶ 5. On May 10, 1990, Norman filed a claim for a disability that he claimed arose frame

an accident. *Plaintiffs' Exh. 1* ¶ 16; *Plaintiffs' Exh, 2* ¶ 10. While investigating Norman's claim, Monarch determined that it had issued the policy based upon false representations in Norman's application. Monarch rescinded the policy and returned all premiums to Norman on or about September 25, 1990. *Plaintiffs' Exh. 1* ¶ 18; *Plaintiffs' Exh. 2* ¶ 12. Norman refused to accept the premiums and continued to claim benefits under the policy. *Plaintiffs' Exh. 1* ¶ 18; *Plaintiffs' Exh. 2* ¶ 12.

The debtors listed the Monarch claim, valued at $36,000, as jointly owned on their schedule of liquidated debts due them. *Plaintiffs' Exh. 7.* The debtors did not include the Monarch claim in their schedule of exemptions.

Monarch, on February 18, 1992, while the debtors' bankruptcy case remained open, filed a complaint against Norman in Connecticut Superior Court, alleging that Norman had misrepresented his medical condition and employment status on his Mortgage Disability Insurance Application and seeking, *inter alia,* to rescind the policy. *Plaintiffs' Exh. 1.* Peter M. Appleton ("Appleton"), an attorney retained by Norman, answered the complaint on December 9, 1992, denying Monarch's allegations of misrepresentation and counterclaiming for $1,500 hundred per month in disability benefits. *Plaintiffs' Exh. 2.* The debtors did not tell Appleton or Robert G.Oliver ("Oliver"), Monarch's attorney, that the debtors had filed a bankruptcy petition and had listed the Monarch claim as an asset of the bankruptcy estate.

Monarch and Norman settled the state court litigation in August, 1994, after the initial closing of the debtors' case. Pursuant to the settlement, the mortgage disability insurance policy was rescinded as null and void *ab initio.* In consideration for the rescission, Monarch paid $15,000 to Norman. Oliver's law firm, on August 20, 1994, sent Appleton a $15,000 check jointly payable to Appleton and to Norman. *Plaintiffs' Exh. 3.* After endorsement of the check, Appleton retained $5,500 as fees and remitted $9,500 to the debtors. The debtors informed neither Falvey nor Hoffman of the Monarch settlement and their receipt of funds.

After their case was reopened, the debtors amended their schedule of exemptions on November 3, 1995, and again on September 25, 1996. Neither amendment included the Monarch claim. On May 28, 1997, the debtors amended their schedule of exemptions to include the Monarch claim, valued at $9,500.

The debtors argue that the estate has no interest in the Monarch disbursement because they disclosed the claim in their bankruptcy petition and claimed it to be exempt, and no objections to the exemption claim were filed. *Debtor's Post Trial* Brief at 11.

## V.

The plaintiffs bear the burden of proof in an action to revoke a discharge. *In re Yonikus,* 974 F.2d 901, 904 (7th Cir.1992), *citing Werner v. Puente (In re Puente),* 49 B.R. 966, 968 (Bankr.W.D.N.Y.1985). To obtain relief under § 727(d)(2), a plaintiff must prove both that a debtor acquired or became entitled to acquire property of the estate and that the debtor knowingly, with intent to defraud, failed to report or deliver the property to the trustee. *Bowman v. Belt Valley Bank (In re Bowman),* 173 B.R. 922, 925 (9th Cir. BAP 1994), *citing Yonikus,* 974 F.2d at 905. The plaintiffs' proof must meet the preponderance of the evidence standard. *Bowman,* 173 B.R. at 925, *citing Western Wire Works v. Lawler (In re Lawler),* 141 B.R. 425, 429 (9th Cir. BAP 1992); *Olsen v. Reese (In re Reese),* 203 B.R. 425, 430 (Bankr.N.D.Ill.1997); *Clements v. Webster (In re Webster),* 1991 WL 245006 at *3–4 (D.Colo.1991). The court may base a finding of fraudulent intent on inferences drawn from a course of conduct, or from all of the surrounding circumstances. *Yonikus,* 974 F.2d at 905–06 (citations omitted).

## VI.

With respect to the Rosenshein claim, the court concludes that the $30,000 dividend check the debtors received was property of the estate. The court finds that the debtors, having knowledge of the corporation's dissolution in March 1985, entered into the BJR contracts in 1986 individually, doing business as Sylvia Construction Company. The rein-

statement of the corporation on May 8, 1997, whatever its other effect, is of no consequence in this proceeding. The court further finds that the debtors possessed the requisite fraudulent intent, in that they were aware at all relevant times that the corporation had been dissolved, they knew they were asserting the Rosenshein claim in their individual names, they knowingly and fraudulently failed to deliver the $30,000 dividend check to Hoffman, and they misinformed Hoffman about the Rosenshein claim when he later inquired about the ownership of the claim. The court concludes that the debtors' failure to deliver the $30,000 dividend check to Hoffman as property of the their estate provides the basis for the court to revoke their discharge.

As to the Monarch claim, the court determines that the $15,000 the debtors received in settlement of the Monarch litigation was property of the estate. The debtors listed the claim as an asset of the estate in their bankruptcy petition and did not claim it was exempt until after the initiation of the instant adversary proceeding. The court finds that the debtors acted with fraudulent intent in that, having identified the Monarch claim as an asset of the estate, they neither informed Hoffman of the $15,000 settlement nor delivered the settlement proceeds to him. The debtors' ex *post facto* attempt to claim an exemption does not excuse them from having failed to report that they had acquired property of the estate. The court concludes that the debtors' failure to deliver to Hoffman the $15,000 settlement proceeds they received provides an independent basis for the court to revoke their discharges.

### VII.

Because the plaintiffs have proven by a preponderance of the evidence that the debtors acquired property of the estate and knowingly, with intent to defraud, failed to deliver the property to the trustee, an order will enter revoking the debtors' discharges.