In re Diana **WICZEK–SPAULDING,**
Debtor.

**Bankruptcy No. BKY–4–95–1191.**

United States Bankruptcy Court,
D. Minnesota.

Aug. 5, 1998.

ceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

## BACKGROUND

The debtor filed a Chapter 13 petition on March 6, 1995. At that time she was employed by Rhone–Poulenc Rorer, Inc., she owned stock options in RPR, and she was eligible to apply for RPR's standard Severance Pay Plan. She did not list as assets or claim exempt in her schedules either the stock options or her rights under the Plan. A Chapter 13 plan was confirmed on June 22, 1995.

On December 8, 1995, RPR notified the debtor that she was eligible to apply for its Voluntary Separation Program, a limited-time offer of an enhanced severance package in exchange for an eligible employee's resignation and release of claims against RPR.

On December 26, 1995, the debtor converted her case to Chapter 7. The next day, she applied to participate in the Program. On January 3, 1996, the debtor signed the release required to entitle her to collect benefits under the Program, and thereafter received from RPR a lump-sum payment of $58,832.01, after taxes, representing the portion of the Program severance package calculated from a salary and years-of-service schedule.

On November 29, 1996, the trustee wrote to the debtor's attorney and asked specifically "whether debtor possessed any stock option in RPR or its subsidiaries as of or after the date of the bankruptcy; if so, the details regarding same including whether exercised, the date or to be exercised, in either event the amount thereof and at what price." On December 10, 1996, the attorney for debtor replied by letter to the trustee that the debtor "reports … [t]here were no such stock options."

On December 31, 1996, the debtor exercised the RPR stock options, the possession of which she had neither reported to the court or to the trustee, and for which she had accordingly never claimed an exemption. She received, after-tax, net proceeds of $10,-395.10 on the exercise of the options and the sale of the resulting stock.

Randall L. Seaver, Fuller, Seaver & Ramette, P.A., Burnsville, Minnesota, for the trustee.

Gregory J. Wald, St. Paul, Minnesota, for debtors.

## ORDER DETERMINING EXEMPTIONS

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on the trustee's objection to the debtor's claims of exemption. Gregory J. Wald appeared for the debtor and Randall L. Seaver appeared for the trustee.

This court has jurisdiction over the motion pursuant to 28 U.S.C. §§ 157(b) and 1334, and Local Rule 1070–1. This is a core pro-

On January 9, 1997, the debtor's attorney informed the trustee by letter that the debtor was mistaken about not having any stock options, that some of her options had expired at the end of the year, and that she exercised those options which had not expired and thereby produced net earnings of $10,395.10.

The debtor subsequently filed an amended Schedule C to include the lump-sum separation payment under RPR's Program and the stock options or the stock sale proceeds. In this motion, the trustee objects to the debtor's claim that the separation payment and the stock sale proceeds are exempt.

## DISCUSSION

### The Separation Payment

While couched as an exemption claim, the debtor really relies on 11 U.S.C. § 348(f)(1) for the proposition that the separation payment received under the Program is not property of the estate. Section 348(f)(1) provides:

Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;

■ The date of the filing of the petition was March 6, 1995, and the date the debtor became eligible for participation in the Program was December 8, 1995. Because the Program did not exist when she filed her petition, her rights under the Program would ordinarily not be property of the estate. The trustee, however, relies on § 348(f)(2), which provides that, contrary to the general rule, if the debtor converts a case under Chapter 13

to a case under another chapter in bad faith, then the property in the converted case shall consist of the property of the estate as of the date of conversion. The debtor's rights under the Program had arisen by the date of conversion.

■ The trustee contends that debtor's benefits under the Program were property of the estate because the debtor's conversion to Chapter 7 was done in order to prevent the separation payment from being considered property of the bankruptcy estate and therefore done in bad faith. However, even if the conversion was solely to secure the benefits under the Program, simply taking advantage of what the statute provides does not by itself amount to bad faith. There is no other evidence to indicate that the conversion was made in bad faith. Therefore, I find that the debtor did not convert her bankruptcy case to Chapter 7 in bad faith, and pursuant to § 348(f)(1), the debtor's benefits earned under the Program are not property of the estate.

The trustee, however, notes that the Plan, RPR's standard severance pay procedure, was in effect on the date of the filing of the petition, and that by subsequently electing participation in the Program, the debtor effectively transferred her right to participate in the Plan. Accordingly, the trustee suggests that at least some of the separation payment under the Program is property of the estate because property of the estate (benefits available under the Plan) was relinquished in return for payment under the Program.

■ While this may be an interesting argument,[1] I need not address it. The RPR Plan contains a standard ERISA antialienation clause and constitutes a formal employee welfare benefit plan under the Employee Retirement Income Security Act of 1974, as

---

1. Determining a reliable valuation of benefits the debtor might have received under the Plan is problematic because although the Plan provides a salary and years-of-service schedule, the amount of severance payable is ultimately subject to RPR's unfettered discretion, both pursuant to the terms of the Plan and actually in practice, according to RPR's assistant general counsel. Second, determining whether the debtor's eligi-

bility under the Plan had any value is difficult because application of the Plan in general is subject to RPR's unfettered discretion. An employee's mere eligibility and willingness to participate in the Plan does not create any obligation on the part of the employer to administer the provisions of the Plan according to its terms or at all.

amended. Therefore, the debtor's rights under the Plan, even at the time of filing the original Chapter 13 petition, were not part of the bankruptcy estate. *See* 11 U.S.C. § 541(c)(2); *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (the antialienation provision required for ERISA qualification constitutes an enforceable transfer restriction for purposes of 11 U.S.C. § 541(c)(2), which excludes from the bankruptcy estate the debtor's interest in a trust that is enforceable under applicable nonbankruptcy law). Accordingly, whatever benefits may have been available to the debtor under the Plan were never property of the bankruptcy estate.[2]

Similarly, the trustee notes that, whatever pre-petition claims the debtor had against RPR were property of the estate, and that by signing a general release of claims against RPR in order to be entitled to separation payment under the Program, the debtor effectively transferred property of the estate (her pre-petition claims). While the trustee is correct that any pre-petition claims the debtor had against RPR were property of the estate, there is no evidence of or even an allegation that any such claims existed or had any value.

Because there is no evidence that the debtor transferred property of the estate in exchange for her rights under the Program, there is no basis for including in the estate any portion of the debtor's benefits under the Program.

### The Stock Proceeds

■ At the time of filing the Chapter 13 petition, the debtor owned but did not disclose the existence of RPR stock options. Because she did not claim them as exempt, the options remained property of the bankruptcy estate. When she converted her case to Chapter 7, the debtor still did not claim the options as exempt, so they were still property of the estate. When the debtor exercised the options, they were still property of the estate, and therefore the resulting stock was property of the estate. *See* 11 U.S.C. §§ 541(a)(6) and (7). Likewise, the

cash proceeds generated from the sale of the stock were property of the estate.

■ The debtor insists that the value of the options must be determined as of the date of the petition. While this would generally be true, it is of no moment in this case because the options no longer exist. If the options still existed, the fact that they increased in value from $1,150.03 on the date of filing the petition to $4009.75 on the date of conversion, to $10,395.10 on the date the options were exercised, would be irrelevant. Section 522(a)(2) of the Bankruptcy Code provides:

> "value" means fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate.

Therefore, the date of filing the petition would have limited the determination of the value of the options to their market value as of the date of filing the petition.

However, the options no longer exist. The proceeds do exist, and they became property of the estate on the date that the options were exercised and the resulting stock was sold. Accordingly, pursuant to 11 U.S.C. § 522(a)(2), because the proceeds became "property of the estate after such date" [of filing the petition], its value is the fair market value "as of the date such property becomes property of the estate." The value of the proceeds is the fair market value on the date the options were exercised and the resulting stock was sold, or $10,395.10 because that is the date on which the proceeds became property of the estate. The debtor has claimed an exemption for the proceeds in the amount of $1,150.00. The rest is not exempt.

**IT IS ORDERED:**

1. The $58,832.01 paid to the debtor by Rhone–Poulenc Rorer, Inc. under its Separation Program is not property of the bankruptcy estate.

---

**2.** Because the Program is a rider to the Plan, the Program is probably also subject to ERISA and therefore not property of the estate regardless of

the debtor's good faith in her decision to convert to Chapter 7.

2. Of the $10,395.10 stock sale proceeds, $1,150.00 is exempt and the balance of $9245.10 is not exempt.