In re James Edward FOBBER and Coretta May Fobber, Debtors.

L. Kirk Wyss, Trustee, Plaintiff,

v.

James Edward Fobber and Coretta May Fobber, Defendants.

Bankruptcy No. 97–21408.
Adversary No. 00–2038.

United States Bankruptcy Court,
E.D. Tennessee.

Nov. 29, 2000.

L. Kirk Wyss, Morristown, TN, for L. Kirk Wyss, Trustee.

David Day, Day & Birdwell, P.C., Cookeville, TN, for James and Coretta Fobber.

## *MEMORANDUM*

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

In this adversary proceeding, the chapter 7 trustee seeks the revocation of the

debtors' discharge pursuant to 11 U.S.C. § 727(d)(2), which directs revocation if "the debtor acquired ... property of the estate ... and knowingly and fraudulently failed to report the acquisition of ... such property, or to deliver or surrender such property to the trustee." 11 U.S.C. § 727(d)(2). Presently before the court is the debtors' motion to dismiss for failure to state a claim upon which relief can be granted or in the alternative for summary judgment. For the reasons discussed below, the motion for summary judgment will be denied. With respect to the dismissal request, the court agrees that the complaint fails to state a claim for revocation of discharge under § 727(d)(2). Rather than dismissing the complaint at this juncture, however, the court will grant the trustee leave to file an amended complaint which addresses the existing deficiencies. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(J) and (O).

## I.

The debtors, James Edward Fobber and Coretta May Fobber, filed a chapter 7 petition commencing the underlying bankruptcy case on June 4, 1997. Upon the debtors' request, the case was converted to chapter 13 on March 6, 1998, but prior to confirmation was subsequently reconverted to chapter 7 on January 13, 1999, upon motion of the chapter 13 trustee. The debtors received a discharge on May 25, 1999.

In the complaint for revocation of discharge filed on August 8, 2000, the chapter 7 trustee alleges that on May 17, 1998, during the chapter 13 phase of their bankruptcy case, the debtors sold for $35,000 an unencumbered asset of the estate, a 1993 Kenworth tractor. The trustee alleges that the sale was "without notice to the Chapter 13 Trustee and unknown to the Chapter 7 Trustee" and that "[d]espite good faith negotiations, the Debtors have refused to pay the money back into the bankruptcy estate." The trustee requests that the court revoke the debtors' dis-

charge and order the debtors to pay the $35,000 to the trustee.

In response to the complaint, the debtors filed on September 11, 2000, an answer along with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as incorporated by Fed. R. Bankr.P. 7012(b), or in the alternative for summary judgment under Fed. R.Civ.P. 56, as incorporated by Fed. R. Bankr.P. 7056. In their brief in support of the motion, the debtors assert that the complaint fails to state a claim under § 727(d)(2) because there are no allegations that the debtors acquired property of the estate or that the acquisition was concealed. Alternatively, the debtors contend that no genuine issue of material fact exists and they are entitled to judgment as a matter of law because: (1) the 1993 Kenworth that they sold while in chapter 13 is not an asset of the chapter 7 estate as defined by 11 U.S.C. § 348(f); and (2) the debtors have not acquired property of the estate because they distributed all of the proceeds from that sale to their creditors. In support of their summary judgment motion, the debtors filed on September 25, 2000, the affidavit of Coretta May Fobber wherein she states that the sale by the debtors was a "good faith attempt to satisfy our obligations to creditors" and "[t]he proceeds of this sale ... were entirely distributed to creditors." Mrs. Fobber also states that at no time did she either knowingly or fraudulently attempt to conceal the sale and that she provided an itemization of the disbursements from the sale proceeds when requested by the trustee.

The chapter 7 trustee has filed a response to the debtors' motion and a supporting brief, along with the affidavit of the chapter 13 trustee, Gwendolyn M. Kerney. In his response, the trustee denies that the complaint fails to state a claim and characterizes the debtors' assertion that they never acquired property of the estate as "absurd." With respect to the asserted lack of concealment allegations in the complaint, the trustee reiterates that

neither he nor the chapter 13 trustee was aware of the sale and that it was only upon inquiry as to the location of the 1993 Kenworth that he learned of its disposition. The trustee also alleges that the debtors have acted in bad faith throughout their bankruptcy case, citing several instances which have occurred as indicative of the debtors' bad faith.

Regarding the debtors' request for summary judgment, the trustee argues that 11 U.S.C. § 348(f) is inapplicable because this case was originally filed under chapter 7 and thus the chapter 7 estate has retained an interest in the 1993 Kenworth throughout the debtors' bankruptcy case. He also references the affidavit of Ms. Kerney, wherein she states that the debtors did not request permission from her or the court to sell any assets and that after the sale, the debtors proposed a plan reflecting that the debts for the 1993 Kenworth along with two other tractors had been paid in full.

## II.

■■■ In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept as true the factual allegations in the complaint, and determine whether the plaintiff undoubtedly could prove no set of facts in support of his claims that would entitle him to relief. *See, e.g., Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993). A complaint need only give fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id.* Although this standard is extremely liberal, the plaintiff may not simply assert legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Id.* Of course, the burden of demonstrating that a complaint does not state a claim is on the moving party. *See, e.g., Riumbau v. Co-*

*lodner (In re Colodner)*, 147 B.R. 90, 92 (Bankr.S.D.N.Y.1992).

## III.

■■■ Section 727(d) of the Bankruptcy Code provides in pertinent part that:

> On request of the trustee … after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> . . . .
>
> (2) the debtor acquired property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or deliver or surrender such property to the trustee.

11 U.S.C. § 727(d)(2). As restated by one court:

> A plaintiff must prove that the debtor acquired or became entitled to acquire property of the estate and knowingly and fraudulently failed to report or deliver the property to the trustee, in order to obtain relief under § 727(d)(2). Both elements must be met and the plaintiff must prove that the debtor acted with the knowing intent to defraud.

*Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 925 (9th Cir. BAP 1994). As this quotation indicates, the moving party has the burden of proof in an action for revocation of discharge and the standard is a preponderance of the evidence. *Buckstop Lure Co. v. Trost (In re Trost)*, 164 B.R. 740, 744 (Bankr. W.D.Mich.1994). Furthermore, as with respect to objections to discharge in the first instance, "[r]evocation of a discharge under § 727(d) 'is construed liberally in favor of the debtor and strictly against those objecting to discharge.'" *Miller v. Miller (In re Miller)*, 246 B.R. 559, 563 (Bankr.E.D.Tenn.2000) (quoting *In re Trost*, 164 B.R. at 743).

■■■ The complaint's first deficiency according to the debtors is that "[n]o facts

were alleged establishing that the Defendants acquired property of the estate." Although the debtors acknowledge they sold the 1993 Kenworth, they deny that they acquired an interest in any property of the estate. This argument, however, is without merit. Expressly included within the definition of property of the estate are "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541(a)(6). In *Krommenhoek v. Covino (In re Covino)*, 241 B.R. 673 (Bankr.D.Idaho 1999), the court concluded that the proceeds from the debtors' postpetition sale of their paintball business was property of the estate under § 541(a)(6) because the debtors owned the business as of the filing of the petition. *Id.* at 686. As such, the debtors' knowing and fraudulent failure to report and surrender those sale proceeds to the trustee was the basis for the revocation of the debtors' discharge under § 727(d)(2) and a money judgment against the debtors for $10,000. *Id.* at 689. *See also Miller v. Kasden (In re Kasden)*, 209 B.R. 239, 243 (8th Cir. BAP 1997) (cash refunds received by debtor from postpetition return of equipment purchased by the debtor prepetition was property of the estate for purposes of § 727(d)(2)); *Suroviak Elec., Inc. v. Sylvia (In re Sylvia)*, 214 B.R. 437, 440–41 (Bankr.D.Conn.1997) (funds received by debtors in settlement of prepetition insurance litigation was property of bankruptcy estate, and debtors' knowing and fraudulent failure to deliver funds to trustee provided basis for revocation of discharge); *Puckhaber v. Schwartz (In re Schwartz)*, 64 B.R. 285, 287 (Bankr.D.N.H.1986) (proceeds from debtors' postpetition sale of mortgage interest was property of the estate although evidence did not establish that debtors knowingly and fraudulently failed to deliver proceeds to the trustee).

In the complaint initiating this adversary proceeding, the trustee alleges that on March 17, 1998, while their bankruptcy case was pending, the debtors sold an asset of the estate, a 1993 Kenworth tractor, to LJL Trucks for $35,000 and have refused to deliver the proceeds from this sale to him. Accordingly, contrary to the debtors' contention, the trustee has pled facts establishing that the debtors acquired property of the estate.

■ The second alleged deficiency in the complaint is that "[n]o allegation of concealment is made." The debtors maintain that the complaint does not set forth any facts indicating that they "knowingly and fraudulently" failed to report the acquisition of or entitlement to estate property and note the requirement of Fed. R. Bankr.P. 7009(b) that fraud be pled with particularity. An examination of the complaint reveals that the debtors have raised a legitimate issue. Nowhere in his complaint does the trustee assert that the debtors "knowingly and fraudulently" sold the 1993 Kenworth or that they "knowingly and fraudulently" failed to turn the proceeds over to him. The only fact alleged in addition to the sale and the refusal to turn over the proceeds is that the sale was "without notice to the Chapter 13 Trustee and unknown to the Chapter 7 Trustee." In *Stewart v. Black (In re Black)*, 19 B.R. 468 (Bankr.M.D.Tenn.1982), a fellow Tennessee jurist observed that:

> In order to revoke the debtor's discharge, the trustee must establish that the debtor has acquired or become entitled to property of the estate and has knowingly and fraudulently failed to report or deliver this property to the trustee. Both elements of this test must be satisfied. A debtor's discharge cannot be revoked solely on the basis that the debtor failed to inform the trustee of his receipt of property of the estate. The party seeking revocation must additionally prove that the debtor knowingly and fraudulently concealed this information from the trustee.

*Id.* at 470 (citing 4 Collier On Bankruptcy ¶ 727.15(4) (15th ed.1981)). *See also Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir.1992) ("[I]t is not sufficient that the trustee merely demonstrate that [debtor]

failed to report property of the bankruptcy estate. In order to revoke the discharge, Bankruptcy Code § 727(d)(2) requires the trustee to also show that [the debtor] 'knowingly and fraudulently failed to report the acquisition of or entitlement to such property.' ").

In both his response to the debtors' motion to dismiss and brief, the trustee does assert that the debtors have acted in bad faith and cites various incidents in these proceedings which would tend to show that the debtors acted with fraudulent intent. However, assertions of fraud in a brief or in response to a motion to dismiss do not remedy defects in a complaint. Because the complaint does not allege "knowing and fraudulent" conduct on the part of the debtors or circumstantial facts tending to constitute such conduct, it fails to state a claim upon which relief can be granted under § 727(d)(2). *See Rezin v. Barr (In re Barr)*, 207 B.R. 168, 172 (Bankr.N.D.Ill.1997) (Fed. R.Civ.P. 9(b), as incorporated by Fed. R. Bankr.P. 7009, is applicable to § 727(d)(2) complaint).[1]

Notwithstanding the complaint's failure to state a claim, a Rule 12(b)(6) motion should not be granted and a complaint dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Schwartz v. Kursman (In re Harry Levin, Inc.)*, 175 B.R. 560, 565 (Bankr.E.D.Pa.1994). If the deficiencies in the complaint can be corrected by amendment, repleading should be allowed rather than dismissal. *Id.* at 566. Because the debtors seek alternative relief in the form of summary judgment, the court will determine the merits of that motion before deciding whether the complaint should be dismissed on a summary judgment basis or the trustee given an opportunity to amend.

## IV.

Fed.R.Civ.P. 56, as incorporated by Fed. R. Bankr.P. 7056, mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion. *See Schilling v. Jackson Oil Co. (In re Transport Assoc., Inc.)*, 171 B.R. 232, 234 (Bankr.W.D.Ky. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## V.

The debtors contend that they are entitled to judgment as a matter of law in this proceeding because they distributed all of the sale proceeds to creditors. The debtors maintain that because they did not retain any of the proceeds for themselves, they never "acquired property of the es-

---

1. The *Barr* court noted that Fed.R.Civ.P. 9(b) must be read in conjunction with Fed.R.Civ.P. 8(a) which specifies that pleadings merely need to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *In re Barr*, 207 B.R. at 172. "Thus, it is not necessary that a plaintiff plead each fraudulent detail, so long as the circumstances constituting fraud have adequately been set forth." *Id.* The court in *Argiannis* observed that:

In § 727 cases, bankruptcy courts have allowed the trustee to prove fraud in one of four ways. First, the trustee may produce evidence that debtor was aware of an omission and that debtor knew the omission would mislead the trustee. [Citations omitted]. Second, the trustee may prove fraud by establishing a fraudulent course of conduct on the part of the debtor. [Citations omitted]. Third, a debtor's fraudulent intent may be "inferred from all of the surrounding circumstances." [Citations omitted]. Finally, the trustee may prove fraud by establishing that "the debtor acted so recklessly . . . that fraud is implied."

*Smith v. Argiannis (In re Argiannis)*, 183 B.R. 307, 311 (Bankr.M.D.Fla.1995).

tate." In support of this contention, the debtors have submitted the affidavit of Mrs. Fobber wherein she states, *inter alia,* that the proceeds from the sale were entirely distributed to creditors; none of the sale proceeds were retained; and an itemization of the disbursements were provided to the trustee upon his request. Although the trustee has submitted no evidence which directly contradicts these statements, he does state in his response that the debtors disposed of the sale proceeds "as they saw fit" and that they "did not pay any creditors pursuant to their Chapter 13 plan, but rather used the proceeds from the sale to pay certain selected creditors without the permission of the Chapter 13 Trustee or her knowledge." In his brief the trustee states "[w]hether or not the Debtors retained the funds, used the funds or destroyed the funds is irrelevant, the operative point is that the Debtors, without permission, liquidated property of the estate, failed to turn it over to the Bankruptcy Court or the Trustee, and paid certain selected creditors."

The trustee is correct. It is disingenuous for the debtors to argue that they never "acquired" the proceeds because they subsequently used the money to pay some of their obligations. As the trustee points out, the debtors chose to whom they would pay the money and in what amounts. In *Smith v. Argiannis (In re Argiannis),* 183 B.R. 307, 311 (Bankr. M.D.Fla.1995), the debtors similarly claimed "they were not required to surrender rents ... because the rent proceeds were used for maintenance expenses on the farm." The court rejected this argument, noting that "the defendants were under an absolute duty to report and surrender the property [and that it was] the trustee's decision whether to keep the rent for distribution to the creditors or use it to repair property." *Id.*

In common parlance, "acquire" means "to gain possession or control of." WEB-STER'S II NEW RIVERSIDE UNIVERSITY DICTIO-NARY (1988). Similarly, Black's Law Dictionary defines "acquire" as "to gain by any means, usually by one's own exertions; to get as one's own; to obtain by search, endeavor, investment, practice, or purchase; receive or gain in whatever manner; come to have." BLACK'S LAW DICTIONARY (6th ed.1990). Neither of these definitions include or suggest a retention requirement from which one could infer that unless the acquired object is retained, no acquisition has occurred in the first instance. Moreover, the debtors have offered no authority in support of this assertion and the court can gleam nothing from § 727(d)(2), its legislative history, or any of the cases construing it which would support the debtors' assertion that "acquire" as utilized in that section means both "obtain and retain."

The debtors' argument is analogous to that of a preference defendant who asserts that it is not liable as an initial transferee under §§ 547 and 550(a)(1) of the Bankruptcy Code because it was a mere conduit or intermediary. These defenses have been uniformly rejected where the transferee had complete dominion or control over the monies. *See, e.g., Mostoller v. Pearson Leasing (In re Appalachian Finishing Works),* 244 B.R. 771, 774 (Bankr. E.D.Tenn.2000). Clearly, the debtors in the present case "acquired" the proceeds from sale of the 1993 Kenworth because they "gained possession and control" over those funds. While the fact that the debtors distributed all of the sale proceeds to some of their creditors may be relevant to any good faith consideration, it has no bearing on whether the debtors "acquired" property of the estate in the first instance.

The debtors' second basis for summary judgment presents a more challenging issue. 11 U.S.C. § 348(f)(1)(A) provides that when a chapter 13 case is converted to a case under another chapter, "property of the estate in the converted case shall consist of property of the estate as of the date of filing of the petition, that remains in the possession of or is under

the control of the debtor on the date of conversion." The debtors argue that because the 1993 Kenworth was sold and the proceeds entirely distributed during the chapter 13 so that both were no longer in the debtors' possession at the time their case reconverted to chapter 7, neither the tractor nor its proceeds are property of the chapter 7 estate as defined by § 348(f)(1)(A). As such, the argument continues, the chapter 7 trustee has no claim to these assets and therefore no standing to challenge the debtors' discharge based on the disposition of those assets during the chapter 13 phase of their case.

In response, the chapter 7 trustee submits that § 348(f) is not determinative of what constitutes property of the estate under the facts of this case because it was initially commenced as a chapter 7 instead of a chapter 13 case. The trustee notes that in this court's March 5, 1998 order originally converting this case from chapter 7 to 13, the court directed that "[i]n the event of default by the debtors while in chapter 13, the case will be reconverted to chapter 7 and not dismissed." Based on this language and the original status of the case as a chapter 7, the trustee argues that he "had an interest in the [1993 Kenworth] at the time of the original filing of the Chapter 7, and because of the reconversion aspect of the Order permitting conversion to Chapter 13, retained an interest in all of the property originally in the Chapter 7."

The court will first address the trustee's argument that § 348(f)(1) does not determine what is property of the estate in the instant case because the debtors initially commenced it under chapter 7 rather than 13. A close reading of § 348(f)(1) reveals that it is not limited to cases *commenced* under chapter 13, but that it applies "when a case under chapter 13 of this title is converted." The legislative history to

§ 348(f), which was added to the Bankruptcy Code in 1994, indicates that the amendment "adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir.1985)." *Bobroff*, like the instant case, was originally filed under chapter 7, converted to chapter 13, and then reconverted to chapter 7, presenting the issue of what was property of the estate in the reconverted chapter 7. *See Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 799 (3d Cir.1985). Based on the precise language of § 348(f) and the reference to *Bobroff* in the statute's legislative history, it would appear that § 348(f)(1) is not limited to cases commenced as chapter 13, but applies *whenever* a case is converted from chapter 13 to another chapter, regardless of the case's original status.

Literal application, however, of § 348(f)(1)(A) to the facts of the present case would lead to an absurdity. The debtors' argument is that even if the trustee's allegations are true, that the debtors knowingly and fraudulently disposed of the proceeds from the sale of the 1993 Kenworth, the trustee has no standing to object because neither the proceeds nor the 1993 Kenworth would constitute property of the estate under § 348(f) as neither was in the debtors' possession when the case converted from chapter 13 to 7. If this is a correct statement of the law, then § 348(f) gives debtors *carte blanche* to commit fraud. A chapter 7 debtor who decides that he does not want to surrender to the trustee an asset which is property of the estate can convert to chapter 13 long enough to dispose of the asset, and then reconvert to chapter 7 and obtain a discharge with impunity. In other words, the very act which generally would form the basis for the denial or revocation of discharge, i.e., disposition of property of the estate, would insulate the debtor from liability.[2]

---

**2.** In *Helms v. Arboleda (In re Arboleda)*, 224 B.R. 640 (Bankr.N.D.Ill.1998), a chapter 7 case converted from chapter 13, the chapter 7 trustee sued the debtor and her sister alleging that while the debtor was in chapter 13, she transferred $15,000 to her sister in violation of 11 U.S.C. § 549(a)(1). *Id.* at 643. The debtor moved to dismiss the suit "pursuant to

Not only does application of § 348(f) in this fashion lead to an absurdity, it also appears to be contrary to Congressional intent as set forth in the legislative history to § 348(f).

> This amendment would clarify the Code to resolve a split in the case of [sic] law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 . . . any property acquired after the petition becomes property of the estate, at least until confirmation of a plan.[3] Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate does not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.
>
> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. . . .
>
> This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir.1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir.1985).

H.R. REP. No. 103–834, at 42–43 (1994); 140 Cong. Rec. H10752–01, H10770–71 (daily ed. Oct. 4, 1994). *See also Farmer v. Taco Bell Corp.*, 242 B.R. 435, 437–38 (W.D.Tenn.1999).

In the cited *Bobroff* decision, the court held that a tort cause of action which arose during the chapter 13 phase of the bankruptcy case and thus became property of the chapter 13 estate under 11 U.S.C. § 1306(a), would not be part of the chapter 7 estate upon the case's conversion. *In re Bobroff*, 766 F.2d at 804. The rationale for this ruling was that:

> This result is consonant with the Bankruptcy Code's goal of encouraging the use of debt repayment plans rather than liquidation. [Citation omitted]. If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try would be greatly diminished. Conversely, when chapter 13 does prove to be unavailing "no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts."

*Id.* at 803 (citing *Hannan v. Kirschenbaum (In re Hannan)*, 24 B.R. 691, 692 (Bankr.E.D.N.Y.1982)).

By adopting *Bobroff* in its enactment of § 348(f)(1)(A), Congress intended to avoid penalizing debtors for their chapter 13 efforts by placing them in the same economic position they would have occupied if

---

11 U.S.C. § 348(f)(1) on the basis that the subject $15,000.00 was not property of the Chapter 7 estate because it did not remain in the possession or control of the debtor at the date of the conversion of the case from Chapter 13 to Chapter 7." *Id.* at 648. The trustee responded "that § 348(f)(1)(A) was not intended to deprive a bankruptcy trustee of powers pursuant to 11 U.S.C. §§ 547–550. If it was, then no trustee would ever be able to bring actions pursuant to those sections because the property will always have been transferred to another party." *Id.* Unfortunately, the court did not decide the issue, concluding that the debtor was arguing the underlying merits of the claim, although the court did rule that the trustee had sufficiently pled a cause of action. *Id.* at 648–49.

**3.** In the present case, the debtors were unable to obtain confirmation of a plan while in chapter 13 so the issue of what constitutes property of the estate is not compounded by a consideration of 11 U.S.C. § 1327(b) which provides that confirmation of a plan vests property of the estate in the debtor, unless otherwise provided in the plan or confirmation order. *See, e.g., In re Fisher*, 198 B.R. 721, 726 (Bankr.N.D.Ill.1996), *rev'd, City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958 (N.D.Ill.1997).

they had filed chapter 7 originally. *See In re Pearson,* 214 B.R. 156, 164 (Bankr. N.D.Ohio 1997) ("The general purpose of § 348(f) was to equalize the treatment a debtor would receive under a Chapter 13 case that converted to a Chapter 7 case with the treatment the debtor would receive if he filed a Chapter 7 originally."). In other words, § 348(f)(1)(A) was designed to mitigate the effect of § 1306(a) in cases converted from chapter 13 by excluding from property of the estate in the converted case property brought into the estate under § 1306(a).[4]

In the instant case, however, the property acquired by the debtors during the chapter 13, i.e., the sale proceeds, became property of the estate, not because of the chapter 13 and its expanded definition of property of the estate but because it was proceeds of property held by the debtors at the bankruptcy case's commencement. Under § 541(a)(6), the sale proceeds would have been property of the estate regardless of whether the debtors had stayed in chapter 7 as originally filed or converted to chapter 13. This fact distinguishes the present case from all of the other cases which have applied § 348(f) or have decided the issue of what property is included in the estate when a case is converted from chapter 13 to 7.[5] Because the chapter 13 status of the case did not render the proceeds property of the estate when they otherwise would not have been, application of § 348(f) to the present case is unnecessary to encourage chapter 13's and in no way penalizes the debtors for their chapter 13 efforts.

■ Furthermore, application of § 348(f) to the present case will not result in placing the debtors in the same financial position they would have been if the case had never been in chapter 13. To the contrary, it will result in the debtors improving their position over what it would have been if they had stayed in chapter 7. If the case had remained a chapter 7 as originally filed, there is no question but that the proceeds from the debtors' sale of the 1993 Kenworth would be property of the estate available for distribution to creditors, and that the chapter 7 trustee would have standing to object to the debtors' alleged fraudulent disposition thereof. The debtors' temporary conversion of their bankruptcy case to chapter 13 should not alter this result, especially in light of chapter 13's best interests of creditors requirement, *see* 11 U.S.C. § 1325(a)(4); which is designed "to ensure that unsecured creditors [will] not be harmed by a debtor's choice of Chapter 13 over Chapter 7." HENRY J. SOMMER, CONSUMER BANKRUPTCY LAW AND PRACTICE 190 (3d ed.1988).

In light of § 348(f)'s purpose as stated in its legislative history, it is unclear to this court why Congress, in enacting that provision, limited property of the estate in the converted case to property which "remains" in the possession or under the control of the debtor on the date of conversion. To be consistent with *Bobroff,* it would have been more logical for § 348(f)

---

4. Paragraph (2) of § 348(f) provides a contrary result if the debtor converted the case from chapter 13 in bad faith. In this circumstance, property of the estate in the converted case consists of property of the chapter 13 estate at the time of conversion. *See* 11 U.S.C. § 348(f)(2).

5. For cases decided prior to § 348(f)'s enactment, *see* David A. Hardy, Comment, *Conversion From Chapter 13 to Chapter 7 of the Bankruptcy Code: What Constitutes Property of the Post–Conversion Estate?* 1992 BYU L. REV. 1105, 1106 n. 5 and n. 6 (1992). For cases decided after the enactment of § 348(f),

*see Stamm v. Morton (In re Stamm),* 222 F.3d 216, 218 (5th Cir.2000) (debtors' wages, earned after the filing of their chapter 13 petition and before discharge under chapter 7, are not part of the chapter 7 estate); *Farmer,* 242 B.R. at 441 (cause of action which arose after chapter 13 filed but prior to conversion to chapter 7 not part of the bankruptcy estate); *In re Wiczek–Spaulding,* 223 B.R. 538, 540 (Bankr.D.Minn.1998) (severance benefits which the debtor did not become eligible for until after the filing of the chapter 13 were not part of the estate when case converted to chapter 7).

to define property in the converted case as simply "property of the estate as of the date of filing of the petition." The "possession" language could simply be a recognition of fact that due to the length of chapter 13 cases (up to five years), court-authorized sales and other property dispositions such as abandonment and consumption often occur between the commencement of a bankruptcy case and its conversion to chapter 7, reducing the possibility that a debtor will have the same property at conversion that he or she had at commencement of the case. *See Winchester v. Watson (In re Winchester)*, 46 B.R. 492, 496 (9th Cir. BAP 1984) ("A debtor who converts two or three years after originally filing a Chapter 13 case may have, at the time of conversion, completely different kinds of property than what he owned at the commencement of the Chapter 13.").

 Regardless of the purpose of the language, this court is convinced that § 348(f) was never designed to be a safe harbor for debtors who fraudulently and surreptitiously dispose of property of the estate while in chapter 13. As such, this court holds that § 348(f) is inapplicable to the facts of the present case. In other words, notwithstanding § 348(f), a chapter 7 trustee in a case originally filed under chapter 7, converted to chapter 13, and then reconverted to chapter 7, may seek to revoke the discharge of a debtor who in the chapter 13 phase of the case disposed of property which was property of the estate in the original chapter 7.[6] To hold

otherwise would lead to an absurdity and would not further the legislative intent of § 348(f). *See Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998)("The court must look beyond the language of the statute … when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress."). In light of this conclusion, the debtors' motion for summary judgment based on the assertion that the trustee has no standing because neither the 1993 Kenworth nor the proceeds would be property of the estate under § 348(f) will be denied.

## VI.

Because the court will deny the debtors' motion for summary judgment, the trustee will be granted leave to file any amended complaint addressing the deficiencies noted above in section III. In the event an amended complaint is filed, the court will enter an order denying the debtors' motion to dismiss without prejudice. If no amended complaint is filed within the time provided, the motion to dismiss will be granted. An order to this effect will be entered contemporaneously with the filing of this memorandum opinion.

---

6. It would appear that § 348(f) would thwart any attempt by a chapter 7 trustee to challenge a debtor's fraudulent disposition of property which came into the estate solely because of the expansive definition of property of the estate provided by § 1306(a), although the court has located no case which has considered this issue. In *Baker v. Rank (Matter of Baker)*, 154 F.3d 534 (5th Cir.1998), a case commenced prior to the effective date of § 348(f), a creditor successfully objected to the debtors' discharge pursuant to 11 U.S.C. § 727(a)(2) because prior to the conversion of the case from chapter 13, the debtors used postpetition earnings for a Far East vacation.

Similarly, it would appear that § 348(f) would bar a chapter 7 trustee from objecting to or seeking to revoke a debtor's discharge based on the debtor's fraudulent disposition during the chapter 13 phase of the bankruptcy case of property held by the debtor at the commencement of the case. And a chapter 7 trustee's ability to avoid unauthorized postpetition transfers under 11 U.S.C. § 549 which occurred prior to a case's conversion from chapter 13 would also be questionable. *See infra* note 2. This court is not convinced that either was the intended effect of § 348(f).