**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. AZ-11-1551-DJuPa |
| ) | |
| TIMOTHY ANDREW SALAZAR and ) | Bk. No. 08-11597-JMM |
| GENA ANNETTE SALAZAR, ) | |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| LAWRENCE J. WARFIELD, ) | |
| Chapter 7 Trustee, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| TIMOTHY ANDREW SALAZAR; GENA ) | |
| ANNETTE SALAZAR, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and submitted on February 24, 2012
at Phoenix, Arizona

Filed - March 14, 2012

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable James M. Marlar, Chief Bankruptcy Judge, Presiding

Appearances:   Jacob W. Sparks, Esq., of Scheef & Stone, LLP,
argued for appellant Lawrence J. Warfield,
Chapter 7 Trustee;
Kevin J. Rattay, Esq., of Kevin J. Rattay, PLC,
argued for appellees Timothy Andrew Salazar and
Gena Annette Salazar

Before:  DUNN, JURY, and PAPPAS, Bankruptcy Judges.

DUNN, Bankruptcy Judge:

During their bankruptcy case, the chapter 13[1] debtors received and spent tax refunds that were property of their bankruptcy estate under § 541 of the Bankruptcy Code. The debtors ultimately failed to confirm a chapter 13 plan and converted their case to chapter 7. The bankruptcy court denied the chapter 7 trustee's motion requesting that the debtors be compelled to pay into their chapter 7 estate the amount of the prepetition tax refunds. We AFFIRM.

## I. FACTS

Appellees Timothy Andrew Salazar and Gena Annette Salazar (the "Salazars") filed a chapter 13 petition on September 3, 2008 ("Petition Date"). In their Schedule of Personal Property ("Schedule B"), the Salazars marked "None" in response to Schedule B's request that they disclose "[o]ther liquidated debts owed to debtor including tax refunds." (Emphasis added). However, while the chapter 13 case was pending, the Salazars received refunds based upon their 2008 state and federal tax returns. The prepetition pro rata amount of those refunds totaled $4,084.94 ("Prepetition Refund"). The Salazars never amended their Schedule B to disclose the Prepetition Refund. The Salazars used the Prepetition Refund for living expenses while the chapter 13 case was pending. No plan ever was confirmed in

---

[1] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

their chapter 13 case.

The bankruptcy court converted the Salazars' case from chapter 13 to chapter 7 on August 19, 2009. Appellant Lawrence Warfield was appointed as the chapter 7 trustee ("Trustee") in the converted case. The Trustee filed a motion to compel the Salazars to turn over the Prepetition Refund. The Salazars responded by asserting that because the Prepetition Refund had been spent, i.e., was not in their possession, it no longer constituted property of the estate pursuant to § 348(f)(1)(A). The bankruptcy court agreed in a brief written decision. The Trustee timely filed a notice of appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (E). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred when it denied the Trustee's motion for turnover of the Prepetition Refund.

## IV. STANDARD OF REVIEW

Whether property is property of the estate is a question of law reviewed de novo. Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010). "De novo means review is independent, with no deference given to the trial court's conclusion. See First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006)." Id.

## V. DISCUSSION

The Panel must decide whether the debtors must pay over to the chapter 7 trustee the amount of a tax refund attributable to

3

the debtors' prebankruptcy earnings that they received and spent during the pendency of their chapter 13 case in which no plan was confirmed.

Section 541(a)(1) provides:

The commencement of a case under section 301 . . . of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:
(1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case.

The Salazars and the Trustee agree that pursuant to § 541(a), the Prepetition Refund was property of the chapter 13 estate on the Petition Date, notwithstanding the failure of the Salazars to disclose it in their Schedule B.  Therefore, the expansive definition of property, i.e., postpetition property, of a chapter 13 estate set forth in § 1306 does not impact the decision in this case.[2]  The parties also agree that if the Salazars had not spent the Prepetition Refund, they would be compelled by § 348(f) to turn it over to the Trustee.

---

[2]    Section 1306(a) provides:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title--

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

4

As relevant to this appeal, § 348(f) provides:

§ 348. Effect of conversion
. . . .
(f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title –
    (A) property of the estate in the converted case shall <u>consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion</u> . . . .[3]

(Emphasis added.)

Courts have struggled in applying § 348(f)(1)(A). The Salazars point to the decision of one bankruptcy court that has held that property of the estate following conversion from chapter 13 to chapter 7 will consist of the property in the chapter 13 estate on the petition date, less amounts lawfully removed by the debtors in good faith to pay ordinary and necessary living expenses during the period from the petition date to the conversion date. <u>Bogdanov v. Laflamme (In re Laflamme)</u>, 397 B.R. 194 (Bankr. D.N.H. 2008). In <u>Laflamme</u>, the debtor, while in a chapter 13 case, received and spent prepetition commissions. The debtor was a self-employed real estate broker. When the debtor converted her case to chapter 7, the chapter 7 trustee sought to compel the debtor to turn over the commissions to the chapter 7 estate. Like the Salazars, the

---

[3] At oral argument, counsel for the Trustee conceded that the Salazars actions did not raise an issue of bad faith. We therefore do not decide what impact § 348(f)(2) might have in this dispute. Section 348(f)(2) provides: "If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion."

5

debtor in Laflamme asserted that § 348(f)(1)(A) required that she turn over to the chapter 7 trustee only the amount of the commissions remaining in her possession or under her control. The Laflamme court reasoned that (1) § 1303 vests a chapter 13 debtor with the exclusive right to use and control all property of the chapter 13 estate,[4] (2) § 1304 authorizes a chapter 13 debtor to operate its business in the ordinary course, and (3) it is "implicit" in § 1306(b) that a chapter 13 debtor has the right to use or lease property of the estate in the ordinary course of his or her affairs. Accordingly, the Laflamme court concluded that a chapter 13 debtor may use chapter 13 estate property for living expenses that are "ordinary" and "necessary," to be determined based upon the facts of each case. Id. at 206.

In contrast, the courts in In re Fatsis held that the Bankruptcy Code contains no authority for a chapter 13 debtor not engaged in business to use property of the estate in the "ordinary course."

> The right to use property of the estate in the ordinary course of business is found in § 363(c), a subsection not incorporated into § 1303. It is § 1304, a section applicable only to a chapter 13 debtor who is "self-employed and incurs trade credit in the production of income from such employment . . ." that permits the use of property of the estate in ordinary course of business. The Debtor does not assert that he falls within the ambit of § 1304.

In re Fatsis, 396 B.R. 579, 582 (Bankr. D. Mass. 2008), aff'd, 405 B.R 1, 8 (1st Cir. BAP 2009) (finding no legal support for

---

[4] "Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title." § 1303.

6

debtor's inference that because § 363(b), incorporated by § 1303, allows a chapter 13 debtor to use property of the estate other than in the ordinary course of business with leave of the court, the debtor can use property of the estate in the ordinary course of business without leave of the court).  On the contrary, § 1306(b) provides:  "Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."  Further, § 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."  Thus, unless and until a plan was confirmed in the case, the Salazars arguably were not authorized to use prepetition estate property.

Our starting point for analysis in this appeal is the language of § 348(f)(1)(A).  Where the language of a statute is plain and admits of no more than one meaning, our role is to give full effect to and follow the plain meaning of the statute whenever possible.  2A Norman J. Singer and J.D. Shambie Singer, Statutes and Statutory Construction § 46:1 (7th ed. 2007).  "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." Id. at § 46:6 (citations omitted).  We must presume that every word of a statute was included for a purpose.  See Ratzlaf v. United States, 510 U.S. 135, 140-41 (1994); United States v. Andrews, 600 F.3d 1167, 1173 (9th Cir. 2010) (Clifton, J., concurring).  Conversely, we must presume that every word excluded from a statute was excluded for a purpose.  2A Statutes and Statutory Construction § 46:6.

7

To "possess" or to be "in possession" of a thing is to have it or hold it as property. See Merriam-Webster's Collegiate Dictionary, Eleventh Ed. 2005. To "remain" means "to be a part not destroyed, taken, or used up," or "to continue unchanged." Id. Section 348(f)(1)(A), by its terms, contemplates that the debtors may have "used up" property of the estate and no longer possess it, and any such property of the estate "used up" prior to the conversion of the case to chapter 7 is not property of the estate in the converted case. Accordingly, a "plain meaning" interpretation of § 348(f)(1)(A) leads us to the conclusion that the Prepetition Refund, having been spent, is not property of the estate on conversion.

One court has gone so far as to posit that such a literal application of § 348(f)(1)(A), requiring turnover only of property of the estate as of the commencement of the case that the debtor still possesses on the conversion date, could give debtors "carte blanche to commit fraud."

> A chapter 7 debtor who decides that he does not want to surrender to the trustee an asset which is property of the estate can convert to chapter 13 long enough to dispose of the asset, and then reconvert to chapter 7 and obtain a discharge with impunity. In other words, the very act which generally would form the basis for the denial or revocation of discharge, i.e., disposition of property of the estate, would insulate the debtor from liability.

Wyss v. Fobber (In re Fobber), 256 B.R. 268, 276 (Bankr. E.D. Tenn. 2000) (footnote omitted).

We find the Laflamme court's response to this contention persuasive: "Debtors should be cautioned that this right cannot be abused and will normally be tempered by one of the underlying concepts of the Bankruptcy Code – a fresh start is only available

8

to the honest debtor." Laflamme, 397 B.R. at 206, citing Grogan v. Garner, 498 U.S. 279, 286-87 (1991). The Laflamme court declined "to adopt a bright-line rule to define under what circumstances (and for what purposes) a debtor may use chapter 13 estate property other than to stress the use must be reasonable and will usually include normal living expenses," determined by the facts of the case. Laflamme, 397 B.R. at 206. In other words, the debtor's use of estate property in chapter 13 prior to conversion to chapter 7 is subject to "good faith" scrutiny. See, e.g., §§ 348(f)(2), 707(b)(3)(A) and 727(a)(2)(B).

We recognize that a plain meaning application of § 348(f)(1)(A) creates an anomaly with respect to the outcomes for consumer debtors and their creditors in any other context in chapters 13 and 7. The quid pro quo for a discharge in bankruptcy is that the debtor pay the equivalent of the value of his non-exempt assets to his creditors. Had the Salazars remained in chapter 13, they would have been required to account to their creditors for the Prepetition Refund even though it had been spent. Under the "best interests of creditors test," the Salazars could only confirm a chapter 13 plan which would pay their unsecured creditors the amount those creditors would have received in a hypothetical chapter 7 liquidation as of the Petition Date. See § 1325(a)(4). The value of the Prepetition Refund would have been included in the hypothetical chapter 7 liquidation in the Salazars' chapter 13 case. Further, until the hypothetical chapter 7 liquidation value had been paid to their unsecured creditors, the Salazars would not have been entitled to a discharge in their chapter 13 case, either pursuant to

9

§ 1328(a) by completing their plan payments, or pursuant to § 1328(b) in a "hardship" discharge.[5]

Alternatively, if their case had commenced as a chapter 7, the Salazars would have been required to turn over the Prepetition Refund to the Trustee. Tax refunds are property of the bankruptcy estate under § 541(a). See Segal v. Rochelle, 382 U.S. 375, 379 (1966); United States v. Sims (In re Feiler), 218 F.3d 948, 955-56 (9th Cir. 2000) (The legislative history of § 541 establishes that Congress adopted the result in Segal, making the right to a tax refund property of the estate.); Barowsky v. Serelson (In re Barowsky), 946 F.2d 1516, 1519 (10th Cir. 1991). Section § 521(a)(4)[6] requires the debtor to surrender all property of the estate to the Trustee.

Looking at this anomaly, some courts have declined to apply the plain meaning of § 348(f)(1)(A) in circumstances similar to the case before us on the basis that it produces an absurd result in the statutory scheme of the Bankruptcy Code, looking to the legislative history of the provision for their interpretation of its meaning. Those courts have concluded that the purpose of § 348(f)(1)(A) was to ensure that postpetition earnings of

---

[5] Section 1328(b)(2) provides that, as a condition to chapter 13 debtors receiving a discharge prior to completion of payments under their plan, "the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date . . . ."

[6] As relevant, § 521(a)(4) provides: "The debtor shall-- . . . if a trustee is serving in the case . . . , surrender to the trustee all property of the estate . . . ."

10

debtors while in chapter 13 need not be paid over to a chapter 7 trustee when a case is converted to chapter 7, thus serving as encouragement to debtors to attempt to complete a chapter 13 repayment plan rather than to proceed immediately to liquidation in chapter 7. See, e.g., In re Fobber, 256 B.R. at 277-79.

> When a Chapter 13 case is converted to a Chapter 7 case, a court must determine which assets belonging to the debtor must be considered property of the Chapter 7 estate. Accordingly, a court will seek to apply the provisions of 11 U.S.C. § 348(f) to the facts of the case. However, in some instances, literal application of these provisions leads to an absurdity and is contrary to congressional intent. In order to avoid an absurd result, a court must differentiate between property acquired prior to the commencement of a bankruptcy case and property acquired after the commencement of a bankruptcy case.

In re Grein, 435 B.R. 695, 699 (Bankr. D. Colo. 2010) (footnotes omitted); 2A Statutes and Statutory Construction § 47:25 (not appropriate to adopt a "plain meaning" which would lead to an "absurd" result or create a clear contradiction in a statutory scheme).

While, as we pointed out above, application of the plain language of § 348(f)(1) may be anomalous, depending upon the facts of the case, we do not believe such anomaly equates to producing absurd results or creating a clear contradiction in the statutory scheme in light of the remedies available to chapter 7 trustees where the debtors have not acted in good faith. For example, "chapter 7 trustees who seek former chapter 13 estate property under circumstances indicating abuse can be comforted by the availability of § 727 as a potential remedy." Laflamme, 397 B.R. at 206.

Because we find the plain language of § 348(f)(1)(A)

11

anomalous rather than absurd in its application, we need not, and do not, look beyond the plain meaning of § 348(f)(1)(A) articulated above by resort to the legislative history. As instructed by the Supreme Court, we must determine the intent of Congress in enacting § 348(f)(1)(A) from the terms of the statute. Lamie v. U.S. Trustee, 540 U.S. 526, 542 (2004). "If Congress enacted into law something different from what it intended then it should amend the statute to conform to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'" Id. (citations omitted).

Following Laflamme and a plain meaning interpretation of § 348(f)(1)(A), the bankruptcy court determined that the Salazars spent the Prepetition Refund in good faith to pay ordinary and necessary living expenses during the period from the petition date to the conversion date. Specifically, the bankruptcy court ruled that the Prepetition Refund was spent "in the normal course of living" based on Mr. Salazar's Affidavit, in which he stated that he "used half the refund for my expenses in Texas, and gave the other half to my wife Gena for her to use for living expenses for herself and the children in Arizona." The Trustee does not challenge on appeal the bankruptcy court's finding as to the manner in which the funds were spent. On this record, we find no error by the bankruptcy court in concluding that the Prepetition Refund, having been used up, did not constitute property of the chapter 7 estate on the conversion date.

VI. CONCLUSION

Because the Salazars had spent the Prepetition Refund before

12

the date they converted their case to chapter 7, the plain meaning of the language used in § 348(f)(1)(A) excluded the Prepetition Refund from property of the chapter 7 estate.  We AFFIRM the bankruptcy court's order denying the Trustee's motion to compel turnover of the Prepetition Refund.