FILED

OCT 07 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   OR-14-1145-FJuKi |
| SALLY JANE BRANDENFELS, | Bk. No.   13-32532-ELP7 |
| Debtor. | Adv. No.   13-03159-ELP |

SALLY JANE BRANDENFELS,

Appellant,

v.                                    **MEMORANDUM**[*]

TICOR TITLE INSURANCE CO.,

Appellee.

Argued and Submitted on September 25, 2015
at Seattle, Washington

Filed – October 7, 2015

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable Elizabeth L. Perris, Bankruptcy Judge, Presiding

Appearances:    James Huffman argued for Appellant Sally Jane Brandenfels; Jonathan Mark Radmacher of McEwen Gisvold LLP argued for Appellee Ticor Title Insurance Co.

Before: FARIS, JURY and KIRSCHER, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Appellant Sally Jane Brandenfels ("Appellant" or "Ms. Brandenfels") appeals from the bankruptcy court's denial of discharge under 11 U.S.C. § 727(a)(3) (2005).[1] Because we hold that the trial court did not err in determining that Ms. Brandenfels's financial records were inadequate or nonexistent, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Oregon Holly Company ("Oregon Holly") is owned and operated

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Ms. Brandenfels cites the transcript of the trial before the bankruptcy court, but fails to include the relevant portions of the transcript in her excerpts of record. See Rule 8018(b)(1)(F) (2014) (an appellant's appendix must include "any relevant transcript or portion of it"). We are not obligated to examine portions of the record not included in the excerpts of record. See Kritt v. Kritt (In re Kritt), 190 B.R. 382, 386-87 (9th Cir. BAP 1995); 9th Cir. BAP R. 8009-1 ("The Panel is required to consider only those portions of the transcript included in the excerpts of the record.").

Ms. Brandenfels also fails to provide support in the record for many of her arguments. The Panel is not obligated to search the entire record for error. See Dela Rosa v. Scottsdale Mem'l Health Sys., Inc., 136 F.3d 1241 (9th Cir. 1998); Fed. R. App. P. 10(b)(2).

Moreover, Ms. Brandenfels's appendix lumps numerous distinct documents into single tabs, contrary to 9th Circuit BAP Rule 8018(b)-1(b) ("Documents in a paper appendix shall be divided by tabs."). Puzzlingly, her opening brief does not refer to most of the documents included in the appendix.

Despite these deficiencies, we will consider all relevant documents provided to us.

by Ms. Brandenfels or her husband and is engaged in the business of producing and selling holly wreaths. Oregon Holly was incorporated in Oregon in 1993.

In April 2008, Ms. Brandenfels or her husband incorporated Oregon Holly Wreaths Company ("Oregon Holly Wreaths") in Oregon. Appellee Ticor Title Insurance Co. ("Appellee" or "Ticor") alleges that Oregon Holly Wreaths "actually conducts no business, or simply conducts the business of Oregon Holly Company, under a new name."

On June 24, 2010, Ticor filed suit against Ms. Brandenfels and Oregon Holly for breach of a promissory note. In July 2012, the court entered a judgment in Ticor's favor for $149,999 against Ms. Brandenfels and Oregon Holly.

Beginning in or around December 2012, Ticor issued writs of garnishment for Oregon Holly's and Ms. Brandenfels's accounts at St. Helens Community Federal Credit Union ("St. Helens FCU"). At some point thereafter, Ms. Brandenfels opened an account at Wauna Federal Credit Union ("Wauna FCU") on behalf of Oregon Holly or Oregon Holly Wreaths. Ms. Brandenfels testified that she opened the account "so that Ticor wouldn't be able to go get money owned by Oregon Holly[.]" She deposited checks made out to Oregon Holly and her husband into the Wauna FCU account, thus commingling corporate and personal funds.

Around this same time, Ms. Brandenfels also began taking cash withdrawals from Oregon Holly's and Oregon Holly Wreath's bank accounts. She testified that she took these withdrawals to pay contract labor in cash. Ms. Brandenfels admitted that she often did not receive any receipts for those payments and that

3

her Quickbooks files did not always reflect those transactions. While Ms. Brandenfels's records prior to December 2012 documented cash payments for contract labor, there are no such records beginning in December 2012.

Ms. Brandenfels used credit cards for both business and personal expenses, without differentiating the expenses in her records and sometimes without even including such transactions in her records. Moreover, she sometimes withdrew cash from the corporate accounts for mixed business and personal purposes, without documenting the split in her records.

Ms. Brandenfels also used money from the business accounts for personal purposes or purposes that are not clearly business-related. For example, Ms. Brandenfels wrote a $2,500 check to "Cash" that she paid to a neighbor out of Oregon Holly's Wauna FCU account. She stated that it was to repay a loan from November or December 2012,[3] but she did not record either the loan or the repayment in her Quickbooks files. Ms. Brandenfels also used Oregon Holly's funds to pay for legal services provided to the estate of her deceased father-in-law.[4] Ms. Brandenfels

---

[3] The record is unclear as to whether the loan constituted a business or personal expense, as Ms. Brandenfels testified that the loan related to postage. However, she could not explain why she wrote the check out to "Cash" as opposed to the neighbor personally.

[4] The record is unclear as to the nature of the law firm's services. On the one hand, Ms. Brandenfels testified that her father-in-law's estate owed the law firm money, so it might be inferred that she was paying non-business debt out of company funds. On the other hand, she also implied that the payment may be related to the companies' use of holly and andromeda from the

(continued...)

4

acknowledged that taking money from the St. Helens FCU account and depositing it into the Wauna FCU account allowed her to avoid garnishment and repay such creditors.

Ms. Brandenfels admitted that, after Ticor's garnishment became effective, she used Oregon Holly Wreaths's accounts to

---

[4](...continued)
land held in trust by the estate, which may be a legitimate business expense.  She testified:

> Q.  Who owed Mr. Vanden Bos money?
> A.  The estate.
> Q.  What estate?
> A.  The trust.  The estate of Carl Brandenfels.
> Q.  Is that your husband's deceased father?
> A.  Yes.
> Q.  And why did your deceased father's estate owe Mr. Vanden Bos money?
> A.  Because we grow variegated holly and andromeda that we use from that estate.  We have 500 trees of andromeda that we planted on that estate.  And we use that.
> . . . .
> Q.  Did [Mr. Vanden Bos] provide legal services?
> A.  Yes.  For the -- I'm not sure.
> Q.  You thought it was for the estate, but you're not sure?
> A.  No, I know that we owe -- that it is an estate bill, and that we paid that bill because we use variegated holly and andromeda from that estate, that trust.
> Q.  So Oregon Holly Company paid Mr. Vanden Bos for legal services he provided to your husband's father's estate?
> A.  Correct.

Trial Tr. (Day 1) at 69:4-70:14 (Jan. 22, 2014).  In any event, she testified that she could not point to any documentation reflecting an agreement for Oregon Holly or Oregon Holly Wreath to pay the trust's debts.

5

conduct Oregon Holly's business, pay Oregon Holly's debts, and avoid garnishment. She stated that "Oregon Holly Company and Oregon Holly Wreaths worked jointly together to try to pay the debts [of Oregon Holly]." She decided as an officer and controller of Oregon Holly "to transfer these funds or to cash these funds not into Oregon Holly Company account but into an Oregon Holly Wreaths Company account[.]"

In April 2013, Ms. Brandenfels filed for chapter 7 bankruptcy. Ticor timely initiated an adversary proceeding against Ms. Brandenfels and Oregon Holly. Among other things, Ticor objected to Ms. Brandenfels's discharge under § 727(a)(3).

The bankruptcy court held a trial on January 22-23, 2014. On February 12, 2014, the court issued its oral ruling in Ticor's favor regarding its § 727(a)(3) claim.[5] The court based its decison on three deficiencies in Ms. Brandenfels's records.

First, Ms. Brandenfels failed to document the use of cash withdrawn from the corporate accounts, particularly after Ticor

---

[5] Ticor also argued that the bankruptcy court should deny Ms. Brandenfels' discharge under §§ 727(a)(2)(A) and 727(a)(4)(A), but the bankruptcy court rejected these claims. Regarding the § 727(a)(2)(A) claim for transferring or concealing the debtor's assets to hinder or delay creditors, the court stated that Ticor failed to allege and prove a piercing of the corporate veil theory in order to hold Ms. Brandenfels liable for the transfer of assets between Oregon Holly and Oregon Holly Wreaths. Furthermore, regarding Ms. Brandenfels's personal assets, the court held that Ms. Brandenfels likely did not intend to hinder or delay creditors, but rather just deposited personal money into whatever account was readily accessible. Regarding the § 727(a)(4)(A) claim for false oaths, the court found that Ms. Brandenfels did not knowingly, intentionally, or fraudulently make a false oath on her bankruptcy schedules regarding certain bank accounts, because she thought those accounts were her mother's accounts.

began garnishing Oregon Holly's primary bank account. The court calculated a discrepancy totaling $41,000 between 2010 and 2012, with a $28,000 discrepancy in 2012, when Ticor began its collection efforts. She testified that she used the cash to pay contract labor, but she produced no records to confirm her statements. The court also highlighted Ms. Brandenfels's testimony that she opened new bank accounts and moved assets from Oregon Holly to Oregon Holly Wreaths to avoid paying Oregon Holly's creditors. Considering these facts together, the court concluded that the missing records made it impossible to determine whether she had misused the funds: "Ms. Brandenfels was concealing the contract labor cash payments or [sic] under cover of a chaotic or incomplete set of records. Another possibility is she was doing something else with the cash. We'll just never know."

The second deficiency is "the lack of clarity between cash withdrawals and credit card payments that satisfy business obligations and those that satisfy Ms. Brandenfels's personal obligations." The bankruptcy court noted that Ms. Brandenfels used her various credit cards and withdrew cash indiscriminately for both business and personal uses, but seldom recorded those transactions or distinguished between personal and business use. For example, the court calculated that Ms. Brandenfels made credit card payments of approximately $9,500 in 2012 from one of Oregon Holly Wreath's accounts, but her records fail to indicate whether and to what extent the payments were for business expenses, as opposed to personal expenses.

The third deficiency is the "string of payments to third

parties that were made with company money but do not appear to be company expenses." For example, Ms. Brandenfels paid law firms from Oregon Holly Wreath's account for undefined services related to her deceased father-in-law's estate. She testified that the records do not show that Oregon Holly or Oregon Holly Wreaths had been the beneficiaries of the legal services. She also issued a $2,500 check to repay a loan from a neighbor, but did not keep a record of the loan or the repayment.

Based on these three deficiencies, the bankruptcy court denied Ms. Brandenfels's discharge pursuant to § 727(a)(3). Ms. Brandenfels timely filed her notice of appeal on March 30, 2014.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in denying Appellant's discharge for failure to maintain adequate records under § 727(a)(3).

## STANDARDS OF REVIEW

In an action for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its determinations of mixed questions of law and fact de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 Fed. App'x 589 (9th Cir. 2006).

8

De novo review is independent and gives no deference to the trial court's conclusion. Roth v. Educ. Credit Mgmt. Agency (In re Roth), 490 B.R. 908, 915 (9th Cir. BAP 2013) (citing Warfield v. Salazar (In re Salazar), 465 B.R. 875, 878 (9th Cir. BAP 2012)). Conversely, review for clear error is "significantly deferential," and an appellate court should not reverse unless it is left with "a definite and firm conviction that a mistake has been committed." Id. (quoting Baker v. Mereshian (In re Mereshian), 200 B.R. 342, 345 (9th Cir. BAP 1996)). We give great deference to the bankruptcy court's findings that are based on its determinations of witness credibility. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

**DISCUSSION**

**A. Appellee did not waive its § 727(a)(3) argument.**

Ms. Brandenfels first contends that Ticor waived its argument under § 727(a)(3) because Ticor did not reference § 727(a)(3) in its trial memorandum or its opening statement. We disagree.

First, we note that Ms. Brandenfels failed to include Ticor's trial memorandum in her excerpts of record. "The appellants bear the responsibility to file an adequate record, and the burden of showing that the bankruptcy court's findings of fact are clearly erroneous." Kritt, 190 B.R. at 387 (citing Burkhart v. FDIC (In re Burkhart), 84 B.R. 658, 660 (9th Cir. BAP 1988)). "Appellants should know that an attempt to reverse the trial court's findings of fact will require the entire record relied upon by the trial court be supplied for review." Id. (quoting Burkhart, 84 B.R. at 661). We are not obligated to comb

9

through the lower court's docket in search of support for Ms. Brandenfels's arguments. Nevertheless, we will exercise our discretion to take judicial notice of the trial memorandum, which is available on the bankruptcy court's docket. See O'Rourke v. Seabord Surety Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

Second, we are not persuaded that Ticor waived its § 727(a)(3) argument by omitting it from its trial memorandum. Ms. Brandenfels argues that a party's failure to include in its trial memorandum an argument based on a properly pleaded claim for relief precludes it from making that argument during the trial. Ms. Brandenfels cites no authority for the proposition, and we have found no such authority.

Third, both the bankruptcy court and the parties addressed § 727(a)(3) at trial. The bankruptcy court noted at the outset that Ticor's § 727(a)(3) argument was not included in its trial memorandum and specifically asked Ticor's counsel whether Ticor intended to abandon that argument. In response, Ticor's counsel affirmed that the argument was "an important part of it."[6]

---

[6] The bankruptcy court requested clarification as to Ticor's position on its § 727(a)(3) claim:

> THE COURT: I did want to ask you one question.
> MR. RADMACHER: Yes?
> THE COURT: What about the 727(a)(3) claim? Is it abandoned or just not addressed in the trial memo? That was -- that's the records claim.
> MR. RADMACHER: I think -- no, it isn't mentioned, perhaps -- but, no, that's an
> 
> (continued...)

10

During the course of trial, the court repeatedly addressed the issue of the adequacy of the "books and records."[7] Finally, Ticor raised its § 727(a)(3) argument in its closing statement.[8]

Lastly, Ms. Brandenfels has not identified any prejudice that she suffered as a result of the omission of Ticor's § 727(a)(3) argument from its trial memorandum. As discussed above, this issue was repeatedly addressed during trial, Ms. Brandenfels did not raise her waiver argument at the trial level, and Ms. Brandenfels's counsel even specifically addressed

---

[6](...continued)
> important part of it.
> THE COURT: Okay.
> MR. RADMACHER: The corporate records
> are --
> THE COURT: I just wanted clarification
> since it isn't separately talked about in the
> trial memo.

Trial Tr. (Day 1) at 7:8-17.

[7] For example, the bankruptcy court stated:

> Here's the problem in this case. There's two
> problems in this case from the standpoint
> that we're applying 727 in this case. The
> first problem is the hinder and delay
> problem. The second problem is the books and
> records are awful.

Trial Tr. (Day 1) at 166:1-5.

[8] Among other things, Ticor argued: "With respect to books and records, . . . [t]here's no separate accounts for the companies of any kind. . . . [T]here's no documentation of inter-company transfers. . . . There's no . . . effort to have separate accounting. . . . Undocumented cash is withdrawn and expended. . . . And the final piece is her personal ability and knowledge, she clearly knows what she could do." Trial Tr. (Day 2) at 103:17-104:7 (Jan. 23, 2014).

11

the issues of cash payments and the adequacy of records in his opening and closing statements.

Thus, Ticor did not abandon its § 727(a)(3) argument.

**B.    The bankruptcy court did not err in granting judgment in favor of Appellee pursuant to § 727(a)(3).**

Ms. Brandenfels argues that the bankruptcy court erred in finding her records inadequate under § 727(a)(3)'s two-part test. We find no error.

Section 727(a)(3) provides that the bankruptcy court must deny a discharge when:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

§ 727(a)(3).

The Ninth Circuit has stated "that the purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs." Caneva v. Sun Cmtys. Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008) (citing Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1296 (9th Cir. 1994)). This "requirement removes the risk to creditors of 'the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records.'" Id. (quoting Burchett v. Myers, 202 F.2d 920, 926 (9th Cir. 1953)). This exception to dischargeability "should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." Id. (quoting Industrie Aeronautiche v. Kasler

12

(In re Kasler), 611 F.2d 308, 310 (9th Cir. 1979)).

The debtor must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." Id. (quoting Rhoades v. Wikle, 453 F.2d 51, 53 (9th Cir. 1971)). To assess the sufficiency of those records under § 727(a)(3), the court engages in a two-part analysis. First, a creditor makes a prima facie case by showing "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Id. (quoting Cox, 41 F.3d at 1296). If the creditor meets his burden of showing inadequate or nonexistent records, "the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." Id. (quoting Cox, 41 F.3d at 1296).

### 1. The bankruptcy court correctly held that Appellee established a prima facie case under § 727(a)(3).

The first step of the two-part test requires Ticor to establish that Ms. Brandenfels's records are inadequate and that it is impossible to ascertain her financial condition and material business transactions. Ms. Brandenfels had "an affirmative duty . . . to create books and records accurately documenting [her] business affairs." Id. at 762 (quoting Peterson v. Scott (In re Scott), 172 F.3d 959, 969 (7th Cir. 1999)). "Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or

13

records, then the absence of such amounts to that failure to which the act applies." Id. at 762 (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3d Cir. 1992)).

Ms. Brandenfels implies that the bankruptcy court should only be concerned with whether or not it can ascertain her ultimate financial situation. For example, she argues in her opening brief that the court could piece together an "adequate picture" of her finances, because it "was able to conclude that over the period of three calendar years, her family earned $98,000 . . . ." She contends that her records are complete because she provided nearly 1,500 pages of her financial records, which "include all of the relevant bank accounts, tax returns, and profit and loss statements, and the Quickbooks detail for these accounts of her transactions . . . . Every material transaction is accounted for." She argues that Ticor was able to "fully scrutinize" her records, because it asked her to admit that "almost all of the deposits to the account were payable to 'Oregon Holly' or to 'Oregon Holly Company.'" She states that "[t]he tax returns accounted for all of the money that the defendant had any access to." She relies on Caneva for the proposition that her records only need to demonstrate (1) the debtor's business entities' assets; (2) the assets that pass through the business entities; and (3) the present value of those assets.

However, Ms. Brandenfels ignores Caneva's mandate that a debtor must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition **and to follow his business transactions for a**

14

**reasonable period in the past.**" Caneva, 550 F.3d at 761 (quoting Rhoades, 453 F.2d at 53) (emphasis added). As we have stated recently, "where a business is involved, simply producing a bottom line number as to income earned, expenses incurred, or losses suffered during a calendar year may be insufficient. . . . This is particularly true in the context of a cash intensive business where creditors cannot easily identify possible preferences or fraudulent transfers without more detail." Hussain v. Malik (In re Hussain), 508 B.R. 417, 425 (9th Cir. BAP 2014). It is not enough for Ms. Brandenfels to provide records about her overall financial situation; she must also provide records adequate to allow creditors to trace all of her transactions.

The bankruptcy court enumerated three areas in which it found Ms. Brandenfels's records to be deficient: (1) lack of documentation of cash payments to contract labor; (2) lack of clarity between business and personal credit card payments and cash withdrawals; and (3) payments to third parties that were made with company money for non-business expenses. We address each in turn.

### a. Cash payments to contract workers

First, the bankruptcy court's foremost concern was the undocumented cash withdrawals and claimed cash payments to contract workers. The bankruptcy court calculated a discrepancy of over $41,000 between 2010 and 2014. The court noted that the unaccounted funds amount to 22.5 percent of Ms. Brandenfels's total contract labor costs. In 2012, around the time Ticor began its collection actions, the discrepancy more than quadrupled, to

15

$28,000 from $6,200 the previous year. After Ticor's garnishment became effective, Ms. Brandenfels's records do not reflect a single payment by check to contract labor, even though records from the three previous years show dozens of checks for that purpose during the same season. Furthermore, Ms. Brandenfels admitted that she opened new bank accounts and moved assets from Oregon Holly to Oregon Holly Wreaths to avoid paying creditors. Based on these facts, the bankruptcy court concluded that she "was concealing the contract labor cash payments . . . under cover of a chaotic or incomplete set of records[,]" or "doing something else with the cash."

On appeal, Ms. Brandenfels argues that her records adequately account for all of the cash payments to contract labor. She contends that "[t]here was no shortage of records or missing transactions," although she quickly admits that she failed to include one of her accounts and does not have records for November and December 2012.[9] She claims that payments to contract labor during this time are recorded in her bank statements, which reflect multiple "round number" checks. Finally, she argues generally that she "could explain each and every one of her transactions."

The bankruptcy court did not commit clear error in its consideration of Ms. Brandenfels's cash transactions. Her records do not allow a creditor to "determine the details of that

[9] Ms. Brandenfels argues that "she had failed to include one of her accounts in the Quickbooks exhibit D, but she provided 6 years of back records, and missed only November and December of 2012, and all profit and loss statements through April 2013." Opening Br. at 12.

transaction or verify that it actually took place." Caneva, 550 F.3d at 762. There is no indication whom Ms. Brandenfels paid, or how much she paid a particular person. The bankruptcy court meticulously combed through 1,500 pages of Ms. Brandenfels's records and calculated a $41,000 deficiency, which Ms. Brandenfels does not challenge on appeal. Rather, Ms. Brandenfels argues that her payments to contract labor, while not recorded in her business records, are reflected in her bank statements, which the bankruptcy court "did not notice."[10] However, the bank statements fail to identify the payee or the purpose of the transaction, and we cannot assume that the checks and cash withdrawals were all used to pay contract labor. The bankruptcy court was in the best position to evaluate the facts before it, and we find no clear error in its findings. See Retz, 606 F.3d at 1196.

At oral argument, Ms. Brandenfels argued that, even if her records were insufficient, her oral explanation at trial was sufficient to cure the deficiency. Ms. Brandenfels did not offer any authority in support of this proposition, other than to claim that "jury instructions" permitted such an interpretation. This contention is unpersuasive, not least because there is no right to a jury trial in a § 727 action. More importantly, Ms. Brandenfels's argument ignores the fact that § 727(a)(3)

---

[10] Ms. Brandenfels does not provide us with any citation to the record evidencing that she directed the bankruptcy court to the St. Helens FCU bank statements as the source of the cash to pay contract labor. Given that she admittedly inundated the court with approximately 1,500 pages of documents and apparently could not explain the discrepancies at the time of trial, we cannot say the bankruptcy court erred.

17

requires the debtor to keep and maintain "books, documents, records, and papers," not merely oral explanations or recollections.  Section § 727(a)(3) requires "sufficient written evidence," Caneva, 550 F.3d at 761, because a debtor's post-bankruptcy oral statements can be unreliable or subject to manipulation.

Ms. Brandenfels also claimed at oral argument that Ticor had copies of the checks evidencing payment to contract labor and should have offered them at trial.  However, Ticor did not bear the burden of supplementing her deficient books and records.  If Ms. Brandenfels had other documents that would have completed her records, she could and should have offered them at trial.  She provides no convincing explanation of her failure to do so.

Ms. Brandenfels also does not dispute her earlier testimony that she transferred assets between bank accounts to avoid garnishment.  Coupling this testimony with the large cash discrepancy suspiciously coinciding with Ticor's collection actions, we share the bankruptcy court's concern that Ms. Brandenfels intended to engage in "withholding or concealment of assets . . . under cover of a chaotic or incomplete set of books or records."  Caneva, 550 F.3d at 761 (quoting Burchett, 202 F.2d at 926).  The bankruptcy court did not err in finding Ms. Brandenfels's records inadequate to explain the cash transactions under § 727(a)(3).

### b.    Mixed personal and business expenses

Second, the bankruptcy court stated that Ms. Brandenfels would mingle business and personal expenses, but would rarely differentiate the expenses in her records.  The court totaled

18

$9,500 in credit card payments in 2012, but the records do not reflect the extent the payments concerned personal expenses or business expenses. The court also noted that Ms. Brandenfels obtained cash back of approximately $5,000 between November 2012 and January 2013, but did not maintain any records regarding those funds. Similarly, Ms. Brandenfels's ATM withdrawals that were split between business and personal expenses were not adequately recorded in her financial records.

We find no error in the bankruptcy court's findings that Ms. Brandenfels failed to produce adequate records regarding her co-mingled personal and business expenses. She does not attempt to explain the credit card charges of $9,500 or the cash withdrawals of $5,000, other than to state--without any citation to the record--that she was able to account for all of her transactions.

Ms. Brandenfels's only other argument is that "both personal and small business records were considered together in order to determine the status of the defendant's financial affairs. It is incongruous to consolidate the finances for this analysis, and then to insist on segregating them to critique her records." Opening Br. at 14. Ms. Brandenfels misses the point. Reviewing the personal and business records together is necessary to ascertain Ms. Brandenfels's overall financial condition, but Ms. Brandenfels was also obligated to keep adequate records of her businesses' finances such that a creditor could follow the individual transactions. See Caneva, 550 F.3d at 761 (the debtor's records must allow a creditor "to follow his business transactions for a reasonable period in the past" (citation

19

omitted)). The bankruptcy court did not err in finding that Ms. Brandenfels's failure to do so renders her records incomplete and inadequate.

### c. Non-business expenses

Third, the bankruptcy court found that Ms. Brandenfels's records did not adequately explain payments to third parties that were made with company money for non-business expenses. Ms. Brandenfels states generally that she had offered "a valid explanation" and notes that the "unidentified neighbor" to whom she paid $2,500 of company funds was identified by name at trial. In fact, Ms. Brandenfels utterly failed at trial to provide any written records explaining these transactions. Therefore, we find no error in the bankruptcy court's findings.

Thus, the bankruptcy court correctly determined that Ticor made a prima facie showing of the incompleteness and inadequacy of Ms. Brandenfels's records.

### 2. The bankruptcy court correctly held that Appellant failed to justify her inadequate records.

Since the bankruptcy court did not err in finding that Ms. Brandenfels failed to maintain and preserve adequate records, the burden then shifts to Ms. Brandenfels to justify the inadequacy of her records. The bankruptcy court stated that Ms. Brandenfels argued at trial that her records "were justified under all the circumstances of this case. . . . She's had two bouts of cancer; her husband is not well after his stroke; the economic downturn in 2008 hit her business particularly hard, and as a result [she] has been struggling to keep her business afloat almost singlehandedly." The court concluded, however, that,

20

"[n]otwithstanding [Ms. Brandenfels's situation], these records are still not adequate under 727(a)(3)."

On appeal, Ms. Brandenfels does not assign any error to this finding.[11] The only mention of her burden is a passing statement that, "[e]ven if the plaintiff may have met its burden of proof, the missing records for November and December have been adequately explained under the burden shifting analysis of Caneva." The record, however, contains no such explanation. Ms. Brandenfels also conceded at oral argument that she did not assign error to the second prong on appeal, because she felt that the burden never shifted from Ticor to her. Therefore, the bankruptcy court correctly found that Ms. Brandenfels failed to carry her burden to justify the inadequacy of her records.

## C. The bankruptcy court did not err in selecting the appropriate legal standard.

For her second point of error, Ms. Brandenfels contends that the bankruptcy court applied an erroneous standard in determining the adequacy of the records at issue. However, Ms. Brandenfels fails to present any argument on this matter in her opening brief.[12]

---

[11] Ms. Brandenfels's first question on appeal asks only, "Did the plaintiff meet its burden of proof to demonstrate that the debtor's records were not adequate under 11 USC § 727(a)(3)[?]"

[12] We note that Ms. Brandenfels includes a subsection entitled "Standard for adequacy" toward the end of her opening brief. However, even construing Ms. Brandenfels's arguments liberally, we cannot discern any proper assignment of error by the bankruptcy court. Ms. Brandenfels cites Caneva and a number of other Ninth Circuit cases for the general test to determine
(continued...)

21

As the Ninth Circuit has stated, "we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief. Rather, we 'review only issues which are argued specifically and distinctly in a party's opening brief.'" Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (quoting Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994)). "Significantly, '[a] bare assertion of an issue does not preserve a claim.'" Id. (quoting D.A.R.E. Am. v. Rolling Stone Magazine, 270 F.3d 793, 793 (9th Cir. 2001)). Ms. Brandenfels identifies the bankruptcy court's application of an "erroneous legal standard to the adequacy of the defendant's records" as one of her points of error, yet fails to "specifically and distinctly" argue that point anywhere in her opening brief. See id.; Rule 8014(a)(8) (2014) (an appellant's brief must include "the argument, which must contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

Moreover, in response to the Panel's questions at oral argument, Ms. Brandenfels's counsel said that he was not challenging the bankruptcy court's articulation of the legal standard, but rather was arguing that the bankruptcy court erred in its application of the relevant standard to the facts.

---

[12] (...continued)
the adequacy of records, but does not identify any way in which the bankruptcy court applied an erroneous standard, especially given that the court also relied primarily on Caneva.

22

Thus, we hold that the bankruptcy court did not err in selecting the appropriate legal standard.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's nondischargeability judgment.